## The Western Union Telegraph Company
### v.
## L. W. DuBois.

*Telegraph Companies—Error in Transmitting Message—Suit by Recipient—Parties—Agency—Damages.*

Where a telegram as delivered states a price lower than in the original, the receiver who has ordered goods on the faith thereof, may maintain an action in his own name against the telegraph company for the excess in price which he has been required to pay.

[Opinion filed November 23, 1888.]

Appeal from the Circuit Court of Ford County; the Hon. Alfred Sample, Judge, presiding.

Messrs. Gross & Broadwell, for appellant.

The acceptance of an offer or proposition transmitted by telegraph creates a contract between the sender and receiver, the terms of which will be evidenced by the messages.    Duble

v. Batts, 38 Texas, 312; Trevor v. Wood, 36 N. Y. 307; Scott & Jarnigan on Telegraphs, Sec. 347; Bishop on Contracts, Sec. 322.

A person selecting the telegraph as a means of communication, makes the telegraph company his agent, and he is bound by the message as delivered to the person addressed. W. U. Tel. Co. v. Harris, 19 Ill. App. 347, 354; Morgan v. The People, 59 Ill. 58; Durkee v. Vermont Cent. Ry., 29 Vt. 127; Dunning v. Roberts, 35 Barb. 463; Trevor v. Wood, 36 N. Y. (9 Tiff.) 307; Saveland v. Green, 40 Wis. 431; Wilson v. Minn. & N. W. R. Co., 18 N. W. Rep. 291; Scott & Jarnigan on Telegraphs, Secs. 345, 347; Bishop on Contracts, Sec. 328.

The relation between the telegraph company and a person to whom a message is addressed, is not contractual. They are not in privity. It is only when the person to whom the message is addressed is the one interested in its correct transmission, and by whom the expense of sending it is borne, that he will be regarded as the one with whom the contract is made. De Rutte v. N. Y. Albany, etc., Elec., etc., Tel. Co., 1 Daly, 547; S. C., 30 How. 403.

Messrs. TIPTON & MOFFETT, for appellee.

Without regard to what the English rule may be, the American rule, and especially the rule in this State, is, that "there is sufficient privity of contract between the receiver of the message and the company to enable the former to maintain an action against the latter for negligence, although the price of transmission was paid by the sender." 6 Wait's Actions and Defenses, p. 17; Aiken v. Tel. Co., 5 S. C. 358; New York Tel. Co. v. Dryburg, 35 Pa. St. 298; W. U. Tel. Co. v. Valentine, 18 Ill. App. 57; W. U. Tel. Co. v. Pope, 11 Ill. App. 289; W. U. Tel. Co. v. Hope, 11 Ill. App. 289; Ellis v. Am. Tel. Co., 13 Allen, 226; May v. W. U. Tel. Co., 112 Mass. 90; Ellwood v. W. U. Tel. Co., 45 N. Y. 549.

The delivery of the message by the company to the sendee amounts to a representation to him that it has been employed to transmit the intelligence it contains, which, if untrue,

through the negligence of its servants, constitutes a misfeasance for which the company is liable to the receiver. Bigelow on Fraud, Ch. 1, Sec. 3; May v. W. U. Tel. Co., 112 Mass. 90.

It is conceded that there was a mistake in the telegram as delivered to appellee and upon which he acted. And as the company offered no excuse for the mistake, it is attributable to its negligence. Tyler, Ulmon & Co. v. W. U. Tel. Co., 60 Ill. 440; W. U. Tel. Co. v. Tyler, 74 Ill. 168; Pope v. W. U. Tel. Co., 9 Ill. App. 283; Pope v. W. U. Tel. Co., 14 Ill. App. 535; W. U. Tel. Co. v. Pope, 12 Ill. App. 289; W. U. Tel. Co. v. Harris & Comstock, 19 Ill. App. 347; W. U. Tel. Co. v. Valentine, 18 Ill. App. 57.

It was the duty of appellee when damages would necessarily follow by the negligent act of appellant to take such action in the matter as would cause the least damage possible.

Having done so, his measure of damages, the actual damage sustained by him, was twenty cents per barrel, or $37.40; and this appellant is liable for in this action. W. U. Tel. Co. v. Valentine, 18 Ill. App. 57; Strausse v. W. U. Tel. Co., 8 Biss. 104; W. U. Tel. Co. v. Fatman, 73 Ga. 285; Rule v. W. U. Tel. Co., 55 Tex. 308; Wait's Actions and Defenses, Vol. 6, p. 19, 20; Sutherland on Damages, Vol. 3, p. 298; W. U. Tel. Co. v. Harris, 19 Ill. App. 357.

WALL, P. J. This suit was brought by the appellee to recover damages alleged to have been sustained by reason of an error in the transmission of a telegram received by the appellee. The case made by the proof was that appellee, who was a restaurant keeper and dealer in fruit at Gibson, Illinois, wrote to J. H. Moore, also a dealer in fruit, of North Java, N. Y., asking at what price the latter could furnish a carload of apples.

Moore answered by telegraph that the price would be one dollar and seventy-five cents per barrel, but by some negligence in transmission it read when received, one dollar and fifty-five cents, making a difference of twenty cents per barrel. The appellee being willing to purchase at the latter price, accepted

the offer and sent two hundred dollars on the account to Moore as was required by the custom of dealing between them.

In due time the carload of apples arrived at Gibson, and then, or just before, a bill of lading with draft attached reached the local bank for collection. This draft was for the balance at the rate of one dollar and seventy-five cents per barrel, and it had to be paid before the apples would be delivered.

When appellee learned the amount of the draft, it was apparent there was a mistake somewhere, and investigation revealed that the fault was with the telegraph company, appellant. No excuse for the error has been offered and it may be assumed none can be.

When appellee accepted the offer as contained in the telegram, he proceeded to dispose of the apples he then had on hand in anticipation of those thus contracted for, and when the car had arrived and the mistake was discovered, he was put to the alternative of taking the fruit at the advanced prices or of submitting to the risk and inconvenience of the opposite course. He had advanced two hundred dollars and he needed the apples and he decided to pay the draft, which he did.

The difference in price amounted to $37.40 and to recover this sum the present action was commenced. The case was tried by the court by consent, a jury being waived, and there was a judgment for plaintiff for one cent and costs. From this judgment the telegraph company has prosecuted an appeal to this court, assigning errors upon the record in the appropriate way to present the point that upon the facts stated there is no liability from appellant to appellee. Cross-error is assigned by appellee for the purpose of raising the question as to the amount of damages, and presenting the proposition that upon the facts stated, appellee should recover of appellant the entire damage sustained, to wit, twenty cents per barrel, or $37.40, the amount sued for. Thus two questions fairly arise for our decision :

First, can appellee, the receiver of the telegram, sue the telegraph company for an error in transmission; and second if he can, what is the proper measure of his damages?

It is contended by appellant that the telegraph company was the agent of the sender and that it had no such relations, contractual or otherwise, with the receiver, as to support an action at the instance of the latter for the negligence in proof.

It is no doubt true that the company was the agent of the sender, and that appellee, if he had chosen, might have so treated the matter, and might have required the sender to look to the company for relief. This, of course, would be so upon the ordinary doctrine which holds the principal for the act of his agent, and binds him for any error or mistake of the agent in the transaction of the business about which he is employed. In such a case the receiver might well suppose the telegram had been correctly transmitted and might act accordingly, and in a controversy between him and the sender, the message as received would be deemed the original and furnish the basis of recovery. Morgan v. The People, 59 Ill. 58; Scott & Jarnigan on Law of Telegraphs, Sections 343 to 347.

But there are many cases where the only injury sustained falls upon the receiver, and when the sender could show no damage. For example, where the message is not promptly delivered, and the receiver loses thereby a valuable bargain, or where the sender had assumed merely to report the market by telegraph and the receiver is misled in making an order. It is apparent that the ends of justice would not be met by regarding the company as merely the agent of the sender in all cases, and in limiting liability to the contractual relation so established.

In a certain sense, the telegraph company is a public agency. The franchise it holds from the State enables it to take property for the purpose of locating its line by virtue of the eminent domain. It must serve all alike and must transmit messages in the order received. It has some of the qualities, though not all, of a common carrier, and has been held to some, though not all, of a carrier's responsibility.

It is not surprising, then, to find that courts have held that to some extent the telegraph company is the agent of the receiver as well as of the sender, and that, even regarding it as

the agent of the sender only, the receiver may hold it liable for any misfeasance (as contradistinguished from mere nonfeasance or neglect), whereby he sustains a loss. Such, it is believed, has been the uniform current of decision in this country, though formerly the ruling in England was otherwise, and is now, so far as we are advised. The leading case in America, followed generally by the courts and approved by text-writers, is N. Y. etc., Tel. Co. v. Dryburg, 35 Pa. St. 298. A message was given to the company in New York, whereby the sender requested the receiver (Dryburg), a florist in Philadelphia, to send him two hand boquets by a certain time.

The message as received by Dryburg read two hundred boquets, and before the error was discovered he had cut valuable flowers and bought others, so that his damage, by reason of the mistake, was assessed at $100. We quote the following from the opinion of the court, per Justice Woodward:

" That the relation of principal and agent existed between him (the sender) and the company, there can be no doubt; but I do not think it equally clear that that relation was not established between Dryburg (the receiver) and the company. Telegraph companies are in some sort public institutions, open alike to all, and are largely used in conducting the commerce of the country. When a man receives a message at the hands of the agent of such a company and acts upon it, especially if, as Dryburg did, he use the same medium for responding to the message, it seems reasonable that for all purposes of liability the telegraph company should be considered as much the agent of him who receives as of him who sends the message. In point of fact the fee is often paid on delivery, and I am inclined to think the company ought to be regarded as the common agent of the parties at either end of the wire. But, however this may be, regarding the company as alone the agent of the sender, is it to be doubted that an agent is liable for misfeasance, even to third parties?

" For nonfeasance I agree the agent is responsible only to his employer, because there is no priority of consideration between the agent and a third party. The remedy in such

W. U. Tel. Co. v. DuBois.

cases must be sought in the maxim *respondeat superior;* but, even to this rule there is an exception in the instance of masters of ships; who, although they are the agents of the owners, are also in many respects deemed to be responsible as principals to third parties, not only for their own negligence and nonfeasance but for those of subordinate officers and others employed under them. The general rule, however, was laid down by Lord Holt in Lane v. Colton, 12 Mod. 448, in these words: ' A servant or deputy, as such, can not be charged for neglect; the principal only shall be charged for it; but for a misfeasance an action will lie against a servant or deputy, but not as deputy or servant, but as a *wrongdoer.*' The compilers have taken the rule from this source and the cases cited by them show that it has generally been followed. Paley on Agency, 396 *et seq.;* Story on Agency, sections 308, 309, 314 and 315."

Redfield, in his work on Carriers, in referring to the subject, section 550, says: " But we think the true distinction in regard to the party entitled to bring the action where any default in transmitting a message by a telegraph company arises, must rest upon the distinctions which everywhere obtain in actions on the case. First, the contracting party may maintain an action against the company on the ground of a breach of contract, as well as for any breach of duty as public servants; second, those who are injured by their neglect of duty as public servants, offering to serve faithfully all who may have any interest or connection with their operations, may have an action on the ground of a virtual tort in failing to perform this general duty of faithful and careful servants. This seems to be well illustrated by the case last cited (Dryburg case). The sender of the message might have maintained an action to recover all damages he sustained by an over order being sent by his correspondent. On the other hand, the correspondent was not obliged to send the two hundred boquets and collect pay for them of the man who never intended to order them. He was not obliged to accept such man as his debtor, but might recover all his damages, if he so elected, of the party whose default and negligence had caused them."

Wharton, in his work on Negligence, discussing the subject with reference to telegraph companies, remarks as follows:

"Section 758. Liability for Erroneous Transmissions.—Here the company, having put itself in relation to the receiver and given him, through its negligence, erroneous information whereby he suffered loss, is liable for negligence. It is true the point has been defeated in England, but it has, in this country, been maintained, and with justice; because (1) the company is the agent both of the sender and of the receiver, and (2) on the principle *sic utere tuo ut alienum non lœdas*, if it undertakes to exercise a franchise it must do so in a way which may not injure others."

Shearman & Redfield on Negligence, Secs. 558–60, approve the doctrine announced in the Dryburg case, and suggest as an additional view that when two persons enter into a simple contract for the benefit of a third, the latter, though not a party, is in such privity with the parties and the subject-matter that he may maintain an action on the contract in his own name, a familiar and well-settled rule in this State. Eddy v. Roberts, 17 Ill. 505; Bristow v. Lane, 21 Ill. 194; Steele v. Clark, 77 Ill. 471.

In May v. W. U. Tel. Co., 110 Mass. 90, the suit was by the receiver, and the formal allegation was that the company had delivered a message never sent, falsely representing that it was authorized to deliver the message, whereby plaintiff was induced to send his goods and was damaged. The court, approving the action, said: "It is not necessary to allege there was intent to deceive or that it was false within the knowledge of the defendant. It is not an action of deceit. It is an action in the nature of a false warranty against one acting as agent, representing that he had authority when he had not. Whether such representation is made in terms or tacitly and impliedly, he supposing but not knowing the fact to be true, he is liable to the person misled."

Bigelow on Fraud, Ch. 1, Sec. 3, states the same doctrine and refers to this case as authority, saying: "This action is sometimes said to be based upon a breach of warranty and sometimes upon deceit. In either form of action the injured

party is entitled to recover against the supposed agent to the extent of the damage sustained."

In La Grange v. Tel. Co., 25 La. Ann. 385, the action was by the receiver to recover for damages for goods sent to the wrong address by reason of error in transmitting the message. No question was made as to the right of the receiver to sue, but the nature of the action was considered important to determine. The court remarked: "The action is, in our opinion, *ex contractu* and not *ex delicto.* The defendants hold themselves out to the public as being ready to transmit for hire, messages for individuals, and to deliver faithfully for others such messages as are intrusted to them. They make themselves the agents of both the sender and the receiver, and their failure in their assumed duty creates an obligation in favor of the one who may be injured."

In Aiken v. Tel. Co., 5 S. C. 358, it was held that there is sufficient privity of contract between the receiver and the company to enable the former to maintain an action against the latter, although the price of transmission was paid by the sender. The doctrine of the Dryburg case is approved in Sutherland on Damages, page 314, and in Field on Damages, Sections 415, 416 and 430. See also W. U. T. Co. v. Hope, 11 Ill. App. 289, which was an action by the receiver for failure to promptly deliver the message. We have found no authority in this country against the right of the receiver to sue for an injury sustained by him, though, as has been seen, the courts have not always placed the right upon the ground of contract.

It seems a logical view that because of the peculiar nature of the undertaking of the company in which it performs a service for both parties, it may be regarded as in a certain sense the agent of both. In a controversy between the sender and the receiver, the company may be deemed the agent of the one or the other, according to circumstances, as already intimated.

The liability of the company to the receiver *ex contractu* arises *ex lege.* The contract is to be implied by law, in furtherance of justice, regardless of the intention of the parties.

There are many instances where the law will raise a promise although there is nothing to show that anything of the sort was intended, and when it is improbable that there may have been any such purpose, as when by force or fraud one gets possession of another's money or property, or where a thief sells stolen goods which are reclaimed by the owner, or when one knowingly entices away or harbors another's apprentice, a promise to return the property or to make compensation, as the case may be, will be implied. In such cases there is generally a concurrent remedy by an action for the tort, which the injured party may elect, if he chooses. Such cases differ from those of principal and surety and joint promisors where a contract will be implied and where there is no improbability that in fact there was a promise of payment. In these there is no liability *ex delicto*.

The public character of the business of telegraphing, the duty of the company to serve all alike, and to act when called on for a lawful purpose, must be considered in determining the legal aspect of the situation. When the performance of this *quasi* public service is entered upon by the company at the instance of the sender, there is a clear undertaking with him to do the work well; and as the interest of the receiver is also to be affected, and as he may be expected to act upon the presumption that the work has been well done, the law will raise an assumpsit when the message is delivered that it is the one that was sent. Perhaps in strict terms, the contract thus implied is not a contract of agency, and that it may lead to confusion of ideas to speak of the company as the agent of both sender and receiver, but that the law will contemplate the company and the receiver as holding contractual relations, seems entirely rational.

When, however, the relations of the parties are considered independent of contract, there can be no question as to the liability in an action *ex delicto*. The law raises a duty, which is violated by neglect to perform, promptly and correctly the service undertaken, for which failure an action lies at the instance of the party injured; and aside from this, upon the ordinary principles of agency, the misfeasance of the agent will support an action.

After all, it is not very important, in a practical point of view, whether the liability be considered *ex contractu* or *ex delicto*, since merely the form of action is involved in the analysis which is necessary to settle the question.

Whether considered in the light of tort or contract, it seems clear that the remedy in favor of the party injured directly against the party at fault is to be favored. It is a familiar maxim that the public is interested in the speedy end of litigation, and another that circuity of action is to be avoided. Hence the doctrine of set-off and recoupment. So here, when a new public agency is developed unknown to the law, when most of its rules and principles were formulated, it devolves upon the courts to apply such legal analogies as will promote justice and avoid undue and useless controversy. The Circuit Court properly held that the action might be maintained by the receiver.

As to the second question, affecting the measure of damages. In the cases to which we have referred there was no doubt expressed that the plaintiff could recover such damages as were the proximate result of the fault complained of. The argument of appellant seems to be that appellee, having bought the apples at $1.55, should have held his vendor to the bargain, and let the latter seek his remedy against the company; but, as we have seen, he was not bound to do this; and then the inquiry is, what is the reasonable measure of his loss. We need not repeat the statement of facts, and will only add that it was one of the findings of the court that had the message read $1.75 when received, the plaintiff would not have accepted the offer. Considering the predicament in which he was placed, he did as any prudent business man might have done. He had been compelled to advance the greater part of the purchase money. The fruit was there and he needed it. The shipper was in a distant State, and, if solvent, it was not convenient to sue him there. He might reasonably suppose that the company would, upon learning the facts, make good the loss, and that, acting upon sound business principles, it would prefer to do so without cost or litigation.

It is suggested that the plaintiff might have replevied the

fruit from the carrier. We do not care to consider that prop-
osition, and can hardly see how the appellant company can
with propriety lead us into that field of inquiry. We enter-
tain no doubt that on the record as here presented the plaint-
iff's loss should be measured by the difference between the
price he intended to pay and the price which by stress of the
circumstances he did pay—twenty cents per barrel—$37.40,
and this sum should have been allowed him. The cross-error
assigned by appellee in this respect is sustained.

The judgment will therefore be reversed and the cause
remanded.

*Reversed and remanded.*