## BASS *v.* POSTAL TELEGRAPH-CABLE COMPANY.

1. A submitted to B a proposal by telegraph, to purchase certain oats at a named price for future delivery. The telegram as delivered contained a proposal for immediate delivery. This proposal was accepted by B. In ignorance of the mistake in the telegram A sold the same quantity of oats to C, to be delivered at the time specified in the original proposal. B, upon being informed of the mistake, released A from any obligation to receive the article upon immediate delivery; and both parties treated the matter as if no contract had been made. *Held,* that A could not recover from the telegraph company on the basis of a contract which might have been concluded in the event B had accepted the proposal for delivery at a future time, or for commissions which would have accrued to him in such event.
2. Considered as an action against an agent, on the ground that the telegraph company, by the error in transmission and the delivery of the

telegram containing the acceptance, in effect represented to the sender that the addressee agreed to his proposal for a delivery at a future date, and that this was false and caused him to act to his injury, it was incumbent on him to allege damages which had legally and naturally resulted therefrom to him.

3. Allegations that he had sold the oats at the same price and on the same terms as to delivery as those contained in his proposal; that he could not fulfil his contract at that price; that the market price at the time and place of delivery was greater; that he therefore did not comply with his contract, and became liable to his vendee for a named amount, and that his vendee was demanding such amount of him, did not suffice, without more, to show that any damage had actually accrued to him as a result of such mistake. A petition based on such allegations was demurrable.

Submitted July 18, 1906.—Decided February 14, 1907.

Action for damages.    Before Judge Hodges.    City court of Macon.    September 9, 1905.

Bass sued the telegraph company, alleging that it was engaged in business as a public telegraph company in transmitting messages.    On July 6, 1904, the plaintiff delivered to the defendant a telegram in the following words: "J. L. Cleveland, Cleburne, Texas.    Season Macon Grocery Company affording seed oats sacked cohesion blooming competitors making this price they give me preference sighing.    J. P. Bass."    This cipher message being translated would read as follows: "J. L. Cleveland, Cleburne, Texas.    Have sold Macon Grocery Co. two car-loads seed oats sacked forty-five shipment last half of August, competitors making this price, they give me preference subject to your immediate reply by telegraph. J. P. Bass."    The defendant, notwithstanding its undertaking to correctly transmit the message, transmitted the same so negligently that the word "blooming," in the cipher telegram, which meant "shipment last half of August," was omitted from the message as delivered.    Upon receipt of the message Cleveland immediately accepted the same, and replied to that effect by telegram.    Acting upon his reply, the plaintiff sold to the Macon Grocery Company two car-loads of seed oats, sacked, at forty-five cents per bushel, shipment last half of August.    Cleveland, acting upon the message received by him, immediately shipped two car-loads of seed oats and billed the same to plaintiff at the price of forty-five cents per bushel.    Before the oats arrived at Macon the mistake was discovered; "and it appearing that no contract was made between petitioner and Cleveland, the said oats

were diverted and were never delivered to petitioner." Immediately upon the discovery of the mistake plaintiff endeavored to purchase oats for delivery last half of August, and was unable to purchase the same for less than fifty cents per bushel, which was the market price of oats of the quality described in the telegram. Plaintiff is a broker engaged in buying and selling oats and other commodities on commission. Upon the acceptance of his offer by Cleveland, he became entitled to a brokerage of one half cent per bushel, which, on account of the mistake, he never received. A car-load of oats contains 1,000 bushels. The difference in the market price at the time the mistake was discovered and the price named in the telegram was five cents per bushel, which amounted to $100. Plaintiff has therefore been damaged in the sum of $150, by reason of the negligent transmission of the message. Plaintiff has given to the telegraph company a written statement of his claim for damages, and they have refused to pay the same. In an amendment to the petition it was alleged that plaintiff was unable to comply with his contract with the Macon Grocery Company, and thereupon became liable to it in the sum of $100, and that company is demanding the same of him. The plaintiff fully complied with all the duties required of him in reference to the sale, and, but for the mistake in the message, would have received the sum of $10 as brokerage.

The defendant interposed a demurrer, which contained the following grounds: (1) The petition sets forth no cause of action. (2) The petition alleges as a cause of action the breach of a contract to safely and correctly transmit a certain message, setting forth the part of the contract containing the message, and failing to set forth the clause of the contract defining the obligation of the defendant; and the petition being a suit for damages based upon a written contract, the contract in its entirety should be set forth, or a copy attached. (3) The petition sets forth a claim for damages for the breach of a contract for the future delivery of goods, which contract is contrary to public policy. (4) The petition fails to show any legal obligation upon the plaintiff to make the purchase set out in the petition. The court sustained the demurrer and dismissed the case, and the plaintiff excepted.

*Hardeman & Jones,* for plaintiff.

*Roland Ellis, Felder, Rountree & Wilson,* for defendant.

LUMPKIN, J.    (After stating the foregoing facts.)

1. The proposal as contained in the telegram delivered by Bass to the telegraph company contemplated the delivery of oats during the latter part of August. The proposal as contained in the telegram delivered to Cleveland contemplated immediate delivery. The telegraph company was the agent of Bass, and as between him and Cleveland he was bound by the proposal as actually delivered by his agent. When Cleveland accepted this proposal a binding contract was completed, in which Bass was bound to receive the oats and Cleveland was bound to ship the oats for immediate delivery. W. U. Tel. Co. v. Flint River Lumber Co., 114 Ga. 576, and case cited. See also Richmond Hosiery Mills v. W. U. Tel. Co., 123 Ga. 216. If the oats had been received by Bass and he had held them upon storage until the time for delivery under his agreement with the Macon Grocery Company arrived, the telegraph company would have been liable to him for any actual damages which he sustained resulting from the fact that immediate delivery was brought about by the mistake in the telegram, when in the original message shipment was not contemplated until the latter half of August. But the oats were never received by Bass. Before they reached Macon they were diverted by Cleveland and disposed of at other places. It is apparent from the averments of the petition that neither Cleveland nor Bass considered the latter bound to receive the oats, and what took place was in effect a rescission of the contract which had been made between them by reason of the reception of the erroneous message. The plaintiff seeks to recover damages upon the theory that if the original message had been properly transmitted, and if Cleveland had accepted the proposal contained in it, and the oats had been delivered during the latter half of August, the plaintiff could have held himself harmless on account of his contract with the Macon Grocery Company. There is nothing to indicate that Cleveland would have accepted a proposal of this character, and damages can not be awarded to the plaintiff upon the supposition that Cleveland might have accepted it. See Richmond Hosiery Mills v. Tel. Co., supra. If Cleveland had seen fit to hold Bass liable for the amount due for the oats under the contract for immediate delivery, and Bass had sustained any damage resulting therefrom, the telegraph company would have been liable on account of the mistake in transmitting the message. But

there is no claim of this character in the petition, for the reason that Cleveland treated the contract as not binding upon either party, and did not attempt to hold Bass responsible for the purchase-price of the oats as for immediate delivery.

It is obvious that the plaintiff can not recover brokerage based on an acceptance of his offer, where both parties treated the offer made as not accepted or binding; nor can he recover it on the mere possibility that had the message been transmitted as written, the proposition contained might have been accepted.

2. It may be doubted whether the transaction was one of purchase and resale at all. The telegram does not offer to buy oats, but informs the addressee of a sale subject to his reply. If there was a resale, it was at the same price. The plaintiff seeks to recover commissions, which is a term appropriate to the position of an agent, rather than that of a vendor. It may also be doubted how far a cipher telegram gave notice to the company of a possible resale. But passing by these questions, and construing the plaintiff's petition most favorably to him, instead of most strongly against him, the transaction between the parties was in substance this: Bass requested the telegraph company to ascertain from Cleveland whether the latter would sell him oats for delivery during the second half of August at forty-five cents per bushel. The telegraph company reported to Bass that Cleveland would, and had agreed to do so. On the faith of this statement of the telegraph company, Bass entered into a contract with the Macon Grocery Company for two car-loads of oats, at forty-five cents per bushel, to be delivered during the latter half of August. As a matter of fact, Cleveland had never agreed to deliver the oats at that price at that time. As a consequence of this false statement by the telegraph company, Bass has become liable to the Macon Grocery Company, and claims to have sustained damages. If the contract between Bass and the Macon Grocery Company was a valid and binding contract, and he failed to deliver the oats at the time specified, the Macon Grocery Company could hold him liable for the difference between the contract price and the market price at the time delivery should have been made. But his vendee has not as yet sued him to judgment or compelled him by law to pay any sum to it, nor has he made any settlement or paid any amount to it.

"Damages are given as compensation for the injury done, and

generally this is the measure where the injury is of a character capable of being estimated in money." Civil Code, § 3905. Special damages must be alleged and proved. Civil Code, § 3910. If it appears that the damages sought to be recovered did not result to the plaintiff, he can not recover them. *Freeman* v. *Western Union Tel. Co., 93 Ga.* 230. For a breach of duty he can only recover "such damages as he actually sustained." *Baldwin* v. *Western Union Tel. Co., 93 Ga.* 692. When it is said that damages are given as compensation "for the injury done," this means the injury done to the plaintiff, not to some other person. It is damages for injury which he has actually sustained, not which he has occasioned to a third party, which he may recover. There is no allegation in this case of any necessary expenses incurred or of any loss of profits in the resale, but the plaintiff seeks to recover from the telegraph company on the ground that by reason of its mistake he could not fulfil a contract with a third person without loss or expense; that he therefore broke it, and such person may have a right of action against him for the breach. As stated above, he has paid out nothing to such person voluntarily or by compulsion of law, nor does he even allege that he has been sued to judgment by his vendee. So far the only damage alleged has been sustained by his vendee, not by him. He may never pay anything to his vendee. The latter may never sue him; or if so, he may have a good defense to an action so brought, and may be able to defeat it; or his vendee may delay suing until the bar of the statute of limitations has attached. If he were now allowed to recover of the telegraph company what his vendee may possibly recover of him hereafter, or compel him to pay, and yet in fact he should never pay his vendee anything, his so-called damage would be an actual gain. It appears that the amount of the sale exceeded fifty dollars, and there is nothing to indicate that the contract was in writing, or did not fall within the statute of frauds. Civil Code, § 2693, subsec. 7. It is said that the present plaintiff, if sued, would not be obliged to plead the statute of frauds. But nothing appears to prevent his doing so, unless his pleadings in this case may have that effect. The rule of law is: sustain damages or be injured first, and recover afterwards. The rule which the plaintiff would establish, if allowed to recover on his allegations, would be: recover first, and possibly sustain damages or be injured afterwards. He can not recover of

the telegraph company on the ground that he has damaged his vendee in some amount, even though he did so because of some act of the company. If he can recover at all, it must be because he himself has sustained damage by reason of the failure of duty on the part of the company. The plaintiff seeks to recover, not for damage which he has sustained, but for damage which he is in danger of sustaining.

In 2 Mechem on Sales, §1763, in dealing with the case of a purchase of goods for resale where the seller has notice or knowledge that the goods are being purchased for resale in a particular market, or to be supplied in pursuance of a particular contract, it is said that "If he breaks his contract, damages for losses caused thereby, if not uncertain or remote, may be recovered." In section 1770 a summary of English cases on the subject is given, in which occurs the following: "On the seller's breach of contract to deliver, the buyer may adopt one of two courses: (1) He may elect to fulfil his subcontract, and for that purpose go into the market and purchase the best substitute obtainable, charging the seller with the difference between the contract price of the goods and the price of the goods substituted. (2) He may elect to abandon his subcontract, and is entitled to recover as damages from the seller his loss of profit on the sale, and further to be indemnified by him in respect of any damage (including costs reasonably incurred) or penalties which he has been compelled to pay for breach of his subcontract; but unless the amount of the particular damages or penalties has been made known to the seller, the buyer is not entitled to recover their amount as a matter of right, though, if reasonable, the jury may assess the indemnity at that amount." See, also, 1 Suth. Dam. (3d ed.) §82; Elbinger Actien-Gesellschaft *v.* Armstrong, Law Rep. 9 Q. B. 473; Hydraulic Engineering Co. *v.* McHaffie, Law Rep. 4 Q. B. Div. 670; Grebert-Borgnis *v.* Nugent, Law Rep. 15 Q. B. Div. 85. These authorities refer to cases between two contracting parties, but there is an analogy between them and the case at bar on the subject now under consideration. In *Western Union Tel. Co.* v. *Shotter,* 71 *Ga.* 760, and *Western Union Tel. Co.* v. *Flint River Lumber Co.,* 114 *Ga.* 576, the sender of the telegram fulfilled a contract resulting from an acceptance of a proposal erroneously transmitted by the company, and sustained actual damage.

It is sought to analogize the claim to recover in this case to the

right to recover necessary expenses for physicians' bills and nursing, in personal injury cases, as a part of the damages, without first showing that they have been paid. On that subject the courts have not been entirely uniform in their views; but it has been held that such expenses were recoverable, though they had not been paid. 13 Cyc. 65, and notes. It has even been held that, where the nursing has been done gratuitously, this will not prevent the injured party from recovering the value of such services. See *Nashville Ry. Co.* v. *Miller*, 120 *Ga.* 454. If this ruling be sound, the basis on which it must rest is that a gratuity conferred upon the injured person is no excuse and furnishes no mitigation for the tort-feasor. Upon the same principle it has been held that damages will not be reduced by any amount of insurance received in consequence of the wrong-doer's act. *Western & Atlantic Railroad* v. *Meigs*, 74 *Ga.* 857 (5). Necessary expenses incurred by reason of the tort furnish a distinct element of damages which has long been recognized, and which is entirely different from a mere liability to be held in damages by reason of breaking a collateral contract. Certainly no court would seek to carry the alleged analogy so far as to hold that the plaintiff could recover of the telegraph company although his vendee might relinquish any claim for damages on him or refuse to hold him liable. In the one case an injury has been inflicted and damage done, and a tort-feasor is said not to be entitled to the benefit of a gratuity conferred upon the injured party. In the other case the plaintiff is not damaged at all by reason of his subcontract if he makes no expenditures in connection therewith, loses no profit, and is not compelled to reimburse, or does not voluntarily reimburse, his vendee on account of damages arising from his breach.

A mere general statement that the plaintiff's vendee is demanding damages of him and is holding him liable therefor is not sufficient to show that the plaintiff has yet been damaged. If analogies to cases of personal injury are to be considered, let us take another illustration. A municipal corporation is liable to one who is injured by reason of a hole negligently left in its sidewalk unguarded after notice. The person who dug the hole may be liable over to the city. Suppose that a person should be injured by reason of such defect in a sidewalk, and should notify the city that he intended to claim damages and hold it liable, would it be contended

that the city could at once bring suit against the person who dug the hole, alleging the injury to the passer, that it was liable to him, and therefore it could treat the matter as if it had already been damaged, and recover of the defendant?

It appears from the declaration that the plaintiff did not pay the charge for sending the message, but only "assumed" such payment "and became liable therefor." Here is another alleged liability. But we can not hold that he has also been damaged by the company because he is liable to it for the unpaid toll, and that he may recover of the company that amount because he has not paid it, but may be called on for payment in the future. Indeed he does not ask to recover on this account. See 27 Am. & Eng. Enc. Law (2d ed.), 1069, head "Announcing price or state of market;" Western Union Tel. Co. v. Dubois, 128 Ill. 248 (15 Am. St. 109); Hays v. Western Union Tel. Co., 70 S. C. 16 (67 L. R. A. 481); Western Union Tel. Co. v. DuBois, 29 Ill. App. 219 (an action by the receiver of a message).

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*