# Jordan v. Western Union Telegraph Co.

### Failure to Deliver Telegram.

(Decided June 15, 1916. 72 South. 339.)

1. **Telegraphs and Telephones; Delay in Delivery; Evidence.**—The testimony of an operator as to the report of the messenger when he returned the first time with the undelivered message after having tried to find the addressee, was admissible as a part of the res gestae along with the acts related to the service, which defendant had obligated itself to perform.

2. **Same; Damages; Mental Anguish.**—Damages for mental anguish can not be recovered in an action for delay for failure to deliver telegram, unless shown to have been accompanied by other damages or a right of recovery aside from such injury.

3. **Same; Evidence.**—Where it appeared that by a prior agreement with her brother the telegram was sent to the addressee by her brother, and that she had refunded to her brother the amount of the toll expended under the agreement, this was sufficient proof of actual damages to entitle her to recover damages for mental anguish also.

4. **Same; Instructions.**—Charges authorizing a verdict for defendant if the jury were not reasonably satisfied that plaintiff's agent in sending the telegram intended or expected plaintiff to repay him the amount of charges paid by him, were improperly given, where proof for plaintiff showed without conflict the agency, payment of toll by the agent, and that the money paid by the agent was refunded by the principal, although the amount was small, and the agent was plaintiff's brother.

5. **Same.**—Where the proof was that plaintiff's brother sent her a telegram as her agent, it was error to instruct a verdict for defendant in case

[Jordan v. Western Union Telegraph Company.]

the brother sent the message to plaintiff, intending it for his own benefit, as well as for the benefit of plaintiff.

6. **Same; Office Hours.**—Telegraph companies have the right to provide reasonable regulations as to the hours during which they will do business, and their reasonableness will depend largely upon the character of the business done, the location of the office, etc.

7. **Same.**—What are reasonable hours of telegraph offices is often a mixed question of fact and law.

8. **Same; Damages; Evidence.**—Where the action was for damages for failure to promptly deliver a telegram summoning the addressee to her mother's funeral, the company is not liable in damages for mental pain and anguish because of delay in delivering telegram, if the addressee had reasonable time in which to catch a train which would have brought her to the funeral in time.

APPEAL from Talladega City Court.

Heard before Hon. MARION H. SIMS.

Action by Dora Jordan for damages against the Western Union Telegraph Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The pleadings, the facts and most of the charges sufficiently appear. Charge 21 is as follows:

If you are reasonably satisfied from the evidence that the message was delivered at the hour of 9 o'clock in the morning of March 15th, and if you are further reasonably satisfied from the evidence that thereafter the plaintiff had a reasonable time in which to catch a train which would have placed her at the scene of the funeral of her mother in time to attend the same, you would not be authorized to assert any damages in favor of the plaintiff for or on account of mental pain and anguish.

RIDDLE, BURT & RIDDLE, for appellant. KNOX, ACKER, DIXON & STERNE, for appellee.

GARDNER, J.—Suit by appellant for the recovery of damages for the negligent failure of the telegraph company to promptly deliver a telegram accepted at Talladega, Ala., to be transmitted and delivered to plaintiff at Pell City. The complaint as originally framed contained two counts, counts 1 being in tort, for the breach of a duty growing out of a contract, and charging simple negligence; while count 2 adopts the averments of count 1, and adds the charge of willful, wanton, or intentional injury. The complaint was subsequently amended by the addition of counts 3 and 4. No question is presented, however, on the

pleadings. It is alleged in the complaint, and supported by the proof, that the telegram sent to plaintiff was sent by her brother, one Obie Cunningham, at her request and by previous agreement as her agent. The plaintiff had just returned home from a visit to her mother, who was living at or near Talladega, and had requested her brother to send her a telegram in case their mother's condition grew worse. The telegram reads: "You mother dead, come at once." This message was delivered by Obie Cunningham, while acting as agent for plaintiff, to the agent of the defendant telegraph company at Talladega at about 5:55 o'clock on Sunday afternoon, March 14, 1915. The sender of the telegram was informed that on account of the regulations as to office hours at Pell City the message would not be delivered until the following morning. Said Cuningham paid the charges for the message, and the evidence is without dispute that the same was promptly transmitted to Pell City. The fourth count of the complaint rests solely upon the negligent failure to transmit the message. In view of the above statement as to the prompt transmission of the message being without dispute, the affirmative charge on this count was properly given for the defendant. The night operator at Pell City went off duty at 7 o'clock the following morning, and the day operator, upon going on duty, discovered the telegram. The evidence for plaintiff tends to show that this message was not delivered until 10 o'clock, while the evidence for defendant is to the effect that it was delivered at 9 o'clock, and in ample time for plaintiff to have taken a train to Talladega. The plaintiff insists that the message was delivered too late, and that she was thereby delayed, and prevented from attending her mother's funeral. The messenger boy testified that he did not know the plaintiff, nor where she resided, and told of his efforts to obtain this information. As previously stated, the second count charges a willful or wanton injury; and, upon averments such as those set forth in said count, recovery might have been had upon proof of the aggravated wrong alleged if committed by the manager or operator at Pell City, or by the messenger boy.

(1) The first assignment of error is based on the ruling of the court, permitting the agent or operator at Pell City to testify in regard to the report of the messenger made to him, when the messenger returned the first time with the message undelivered. This ruling of the court is supported by the recent decision of

this court in *Ex parte W. U. T. Co.,* 195 Ala. 359, 70 South. 633, wherein was used the following language: "Where a material issue includes the inquiry whether a party charged has acted prudently, wisely, or in good faith, the information on which he acted, whether in fact true or not, is original and material evidence, and does not fall under the ban of hearsay rule.—3 Wig. on Evi. § 1789, pp. 2313, 2314; Jones on Ev. § 300; *Pace v. L. & N. R. R. Co.,* 166 Ala. 519, 528, 529, 52 South. 52; *Pullen v. Glidden,* 68 Me. 559, 562. What the messenger boy said to the manager, and what the manager said to the messenger boy while engaged in or about the delivery of the message, or the ascertainment, pending delivery thereof, of the whereabouts of the addressee, was of the res gestæ, and was admissible along with the acts related to the service the defendant had obliged itself to perform. —1 Greenl. Ev. § 184."

(2, 3) The plaintiff in this cause sought recovery of damages for mental anguish, and, in recognition of the established rule in this state to the effect that such damage cannot be recovered in cases of this character unless shown to have been accompanied by other damages or a right of recovery aside from such injuries (*Blount v. W. U. T. Co.,* 126 Ala. 105, 27 South. 779; *W. U. T. Co. v. Blocker,* 138 Ala. 484, 35 South. 468; *W. U. T. Co. v. Krichbaum,* 132 Ala. 535, 31 South. 607, 49 L. R. A. [N. S.] p. 246, note X), establishes the facts that this telegram was sent to her by her brother pursuant to a previous agreement, that in sending it he acted as her agent, and that she, in recognition of her liability therefor, had refunded the amount of the toll to her brother as previously agreed. It is therefore not questioned that the plaintiff brought herself well within the rule, by proof of such actual damages as would entitle her to recover damages for mental anguish also. Plaintiff not only established the agency of her brother in the matter, and the payment of the charges by her said agent, and thus the incurrence by her of a legal liability therefor (13 Cyc. 63, 64; *Forbes v. Loftin,* 50 Ala. 396; *B. R. L. & P. Co. v. Humphries,* 172 Ala. 495, 55 South. 307; *B. R. L. & P. Co. v. Moore,* 148 Ala. 115, 42 South. 1024; 15 Cen. Dig. p. 1974; *Bass v. Pos. Tel. Co.,* 127 Ga. 423, 56 S. E. 465, 12 L. R. A. [N. S.] 489), but she also established the fact that she had refunded to her agent the amount of the toll paid.

(4) Some of the assignments of error relate to the action of the trial court in giving several charges, at the request of the

[Jordan v. Western Union Telegraph Company.]

defendant, touching the question of agency. Charge 13 authorized a verdict for defendant, not only if the jury were not reasonably satisfied of the fact of the agency and the payment of the toll by the agent, but if they were not reasonably satisfied that the agent, at the time, "intended that the plaintiff should pay him the amount tendered for such transmission." Charge 15 authorized a verdict for the defendant if the jury were not reasonably satisfied that at the time the message was filed for transmission "the sender expected the plaintiff to repay him the amount of the charges paid by him." We are of the opinion that these charges should not have been given. The proof for the plaintiff showed without conflict that the brother acted as her agent in sending this telegram and in paying the toll. Upon her, therefore, there rested a legal liability for the refund of the amount so advanced. In recognition of this liability plaintiff's testimony shows that she in fact refunded the money. The amount involved was of course small; but, the fact of agency being established, the legal liability of plaintiff for the toll, and payment by her in recognition of such liability, was clearly sufficient, without regard to the intention of the sender, or to his mental operation in reference to a return of the expended sum, at the time he filed the message for transmission. Notwithstanding such legal liability and the refund of the money in recognition thereof, these charges instructed the jury that they were authorized to find a verdict for the defendant if, at the time of the filing of the message, the agent did not "intend" or "expect" the money to be refunded. There was, of course, no evidence as to what the agent intended or expected in this regard, but only as to the fact that he sent the message in pursuance of a previous agreement. Doubtless evidence as to what he intended or expected in this respect, or as to what was passing in his mind at the time, uncommunicated, would have been ruled as objectionable testimony.—*W. U. T. Co. v. Heathcoat*, 149 Ala. 631, 43 South. 117.

(5) So, too, we think that charge 14 should not have been given. It justified a verdict for the defendant if the jury were reasonably satisfied that the brother of plaintiff "sent the message to the plaintiff intending it for his own benefit as well as the benefit of plaintiff." If he sent the telegram pursuant to previous agreement as her agent, and paid the toll, which was afterwards refunded by her, we do not think the fact that he also would have received some benefit or satisfaction from the presence of his

[Jordan v. Western Union Telegraph Company.]

sister at their mother's funeral would justify a verdict for the defendant. He may have been conscious that he would be gratified or comforted to have his sister present, and yet have been acting in the capacity of her agent.

Counsel for appellee seem to rely, in support of these numerous charges, upon the case of *W. U. T. Co. v. Northcutt*, 158 Ala. 537, 48 Couth. 553, 132 Am. St. Rep. 38, but we are of the opinion that the language of that case cannot be held to justify the charges here given. We do not consider these charges to be merely misleading, but to be erroneous instructions of law to the jury; and each of them justified a verdict for the defendant upon the hypothesis therein stated. We are persuaded that these instructions were prejudicial to the plaintiff's case, and that they call for a reversal of the cause.

(6, 7) We deem it unnecessary to treat in detail the other questions presented, and content ourselves with the general observation of the settled rule that "telegraph companies have a right to provide reasonable regulations as to the hours during which they will do business, and their reasonableness will depend largely upon the character of the business, the locality of the office, etc., and is often a mixed question of law and fact," and that what constitutes due diligence is usually a question for the jury, depending upon the facts of each particular case.

(8) According to the theory of the defendant's evidence, the telegram was delivered within ample time for the plaintiff to take the train for Talladega, which train was not due until more than an hour after the receipt of the telegram; and the proof shows that she lived but a short distance from the depot. In view of the evidence, therefore, charge 21, given for the defendant, finds support in the recent case of *Little v. W. U. T. Co.*, 185 Ala. 625, 64 South. 556. The evidence in this regard was in conflict. We think that the affirmative charge requested by the plaintiff was properly refused.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.