## PEYTON v. RAILWAY EXPRESS AGENCY, Inc.

### No. 11713.

Circuit Court of Appeals, Fifth Circuit.

Dec. 19, 1946.

Rehearing Denied Jan. 14, 1947.

Writ of Certiorari Denied March 31, 1947

Robert L. Peyton, for appellant, in pro. per.

Wilford W. Naman, of Waco, Tex., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

PER CURIAM.

The appellant Peyton, an otherwise experienced and intelligent person, acted as his own lawyer in this court and the court below, bringing us a large record containing much repetition and irrelevant matter. His suit against Railway Express Agency in brief alleged that on Nov. 24, 1939, he delivered to the Agency at Waco, Texas, a package addressed "Mr. Robert Benchley (Personal), Hollywood, California," and marked "Manuscript;" that on Dec. 2 he received by mail a notice from Hollywood that "Package remains in this office undelivered because no local address." Plaintiff went to the Waco office and stating that Benchley was well known gave this instruction: "Deliver immediately if possible and if not ascertain present whereabouts and forward there, charges here, waiving storage." On Dec. 9, a note from Hollywood again advised no delivery and asked permission to return the package to plaintiff but permission was denied; and on Dec. 22 the package was returned to plaintiff at Waco. Because of the delay alleged to be negligent, special damages were claimed for $250,000 lost in book royalties and $125,000 lost in motion picture rights, the Agency at the time of accepting the shipment having been fully informed by plaintiff that the manuscript was a book written by him which was being submitted for examination to Robert Benchley to be recommended by him for publication by others, and that it was urgent to get the manuscript to Benchley at once. Punitive damages in a sum of $375,000 were also claimed.

Peyton testified to the occurrence as above stated in great detail; and on the point of damages, that book royalties were from 25 to 50 cents per volume sold, and a best seller often sold a million copies, that publishers usually were interested by a favorable criticism of a critic of note like Benchley; and motion picture rights in popular books brought large sums. A publisher of books testified that Peyton had submitted the manuscript to him in 1943, and on Peyton's paying him for his time he had read it, and found it interesting, though crude, and that when properly edited and if approved by a critic like Benchley he would have considered publishing it in 1940; but that it related to World War I, and after Pearl Harbor, Dec. 7, 1941, World War I ceased to be of much public interest and the book would not likely be published or sell many copies; and that it would have taken a year or more to have gotten the book edited and published; that no manuscript could be valued, and its possibility of success depended very much on getting it approved by a well known and competent critic. It appeared further that Peyton did not know Benchley personally, and had had no communication with him. It did not appear that Benchley was in Hollywood between Nov. 24, 1939, and Dec. 22, 1939; or where he was; or that he habitually or ever read manuscripts of unknown authors without arrangement or pay. Peyton offered proof that in March, 1940, he sent the manuscript to Benchley

by registered mail at Hotel Garden of Allah, 8152 Sunset Boulevard, Hollywood, and Benchley receipted for it, but returned the package unopened, as he did again when sent by express. There was no evidence from Benchley as to what he would have done about the manuscript, or what his opinion would have been of its merit. He was dead at the time of the trial in 1945.

On a motion to direct the verdict at the conclusion of plaintiff's evidence the judge held that the damages claimed were wholly speculative and that there was no proof that Benchley would have opened the package if promptly delivered, or would have given the manuscript favorable consideration if he had read it, and for this reason directed the verdict.

 We therefore assume without so deciding that the failure to find Benchley and make delivery was negligent. But there is no ground shown, in view of the insufficiency of the address, to warrant punitive damages. It is probable that the carriage charge is recoverable as an actual and certain loss, but that was only 35 cents and is not even mentioned in the petition; and a reversal to recover nominal damages only is never granted. We must agree with the judge that the special damages sought are too speculative. It would be difficult to estimate what the royalties or motion picture rights on an unpublished book would be, but we speak not of uncertainty in the *amount*, but in the cause of the loss the plaintiff thinks he has suffered. It may be conceded that the 28-day delay complained of was important to the possible success of the book before World War I was eclipsed by World War II, though no one could have foreseen that in November, 1939. Still all the proof is to the effect that a crude manuscript by an unknown author had no chance of publication without approval by a competent critic, and in this case Benchley was the critic sought to be approached. The jury had no evidence at all that Benchley would have approved the book; or that it would have been published, or would have been popular. The law is that a negligently delayed or distorted communication does not warrant recovery of anticipated profits lost, unless it would have closed a contract out of which they would grow. A possibility that the addressee would have made a contract is not enough, even though he afterwards testifies he probably would have. Western Union Tel. Co. v. Watson, 94 Ga. 202, 21 S.E. 457, 47 Am.St.Rep. 151; Richmond Hosiery Mills v. Western Union Telegraph Co., 123 Ga. 216, 223, 51 S.E. 290; Bass v. Postal Tel. Co., 127 Ga. 423, 56 S.E. 465, 12 L.R.A., N.S., 489; Beatty Co. v. Western Union Tel. Co., 52 W.Va. 410, 44 S.E. 309, and authorities cited. See also note to Kagy v. Western Union Telegraph Co., 117 Am.St. Rep. beginning at page 293. "As a rule no recovery can be had for a loss of profits on contracts which might have been made except for the wrongful act complained of;" 15 Am.Jur., Damages § 154, Note 13, citing among other cases Western Union Tel. Co. v. Hall, 124 U.S. 444, 8 S.Ct. 577, 31 L.Ed. 479, and Western Union Tel. Co. v. Lewis, 5 Cir., 203 F. 832, 49 L. R.A.,N.S., 927. These cases concerning telegrams, while not precisely like this, establish the principle which controls here. There is not enough certainty that, if this manuscript had been delivered the day after it was sent, Benchley would have read and recommended it, and some publisher would have published it, and some motion picture producer would have bought rights, to make profits that might have resulted the basis of a claim for damages against the carrier who delayed delivery.

Judgment affirmed.