## THE WESTERN UNION TELEGRAPH COMPANY vs. SHOTTER.

1. A telegraph company is responsible for the gross negligence of its agents in transmitting messages, in damages, to the party injured thereby.

2. If there are errors in the declaration in setting out the language of the telegram, or the figures or entries thereon, this may be cured by amendment, so as to make the *allegata* and *probata* agree.

3 It is immaterial what condition a telegraph company puts upon the printed heading of its message blanks, so far as its liability for negligence is concerned. It is bound to discharge its duty to the public with skill and diligence, and to be accurate in the discharge of such duty, even if it be necessary to repeat the message, in order to insure accuracy.

4. Where the sender of a telegram offered certain merchandise at a specified price, but through the negligence of the telegraph company the message was so sent as to name a lower price, and upon the acceptance of the offer, he settled with his correspondent at the lower price, the measure of his recovery against the company would be the difference between what he actually received for the property and what he would have received but for the mistake, that is, the market value of the property at the place to which the telegram was sent.

(a.) It was error to charge to the effect that the measure of damages would be the difference between what the vendor received and what he intended to offer the property for; there being no evidence that he could have obtained the price demanded.

5. *Semble*, that a telegraphic operator is the agent of the sender of a message, and if the telegram, as actually sent, offers merchandise at a less price than that written by the sender, and the proposition is accepted, the sender would be bound thereby.

(a.) Whether absolutely bound or not, if a merchant, sending such a dispatch, settles on the basis of the lower price, in good faith, and is induced to do so by the negligence of the servants of the company, he may recover from it.

February 9, 1884.

Telegraph Companies. Damages. Negligence. Amendment. Principal and Agent. Before Judge HARDEN. City Court of Savannah. May Term, 1883.

Shotter, doing business under the name of Shotter & Company, brought an action for damages against the Western Union Telegraph Company, on account of errors in

two telegrams transmitted by the company for the plaintiff from Savannah, Ga., on April 4, 1882. He alleged, in brief, as follows: The first of these messages was to De-Golyer & Brother, of Chicago, Illinois. As written, the body of it read, "Can deliver hundred turpentine sixty-four, immediate reply." This was so transmitted as to read, when delivered, "sixty," instead of "sixty-four." A reply was sent to ship "one hundred barrels as quoted." Plaintiff accordingly shipped one hundred barrels of turpentine, and drew for the price at sixty-four cents per gallon, but payment of the draft was refused, and he was compelled to take four cents less per gallon, and was thereby damaged to the extent of the difference between the price stated in the telegram as sent by him and as delivered by the company, together with the protest fee.

It was alleged that another telegram was sent by the plaintiff on the same night to A. Burdsal, of Indianapolis, offering "fifty turpentine" at "sixty-four," and as delivered it stated the price to be "fifty-four." Like damages were alleged as in the other case

Defendant tendered cost of protest, discount, and tolls paid for transmission of the telegram, and demurred to that part of the declaration which claimed damages on account of the difference in price, on the ground that such damages were not the legal and natural consequence of the failure to transmit the telegrams correctly, but of the voluntary and gratuitous act of plaintiff in accepting less for the turpentine than he had offered to sell for. The court overruled the demurrer.

It is unnecessary to detail the evidence. The amount of difference between the prices as written and as trans mitted was shown, and it appeared that plaintiff, after shipping the turpentine, drew, with bills of lading attached, and placed the drafts in bank. After discovering the errors in the telegrams, and after the drafts were refused, he again drew for the amounts indicated in the telegrams as sent. These drafts were paid, the bills of lading taken

up, and the property delivered. Among other things, plaintiff said: "I don't know but that I considered I had the right to re-sell the said turpentine, upon the refusal of the parties to pay the first drafts; I did feel the market in several places—Chicago and Indianapolis—with such an idea; the market was fluctuating, with a declining tendency. On the day I drew the second drafts, the market was quoted at 61c. in Chicago, 60c. in Cincinnati, and 50c. in Pittsburg."

The telegrams were written on the ordinary night, or half-rate blanks, which contained the following printed stipulations, among others, at the top of the blank:

"The business of telegraphing is liable to errors and delays, arising from causes which cannot at all times be guarded against, including sometimes negligence of servants and agents whom it is necessary to employ. Errors and delays may be prevented by repetition, for which, during the day, half-price extra is charged in addition to the full tariff rates.

"The Western Union Telegraph Company will receive messages, to be sent, without repetition, during the night, for delivery not earlier than the morning of the next ensuing business day, at one-half the usual rates, but in no case for less than twenty-five cents toll for a single message, and upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such messages happening from any cause, beyond a sum equal to ten times the amount paid for transmission, and that no claim for damages shall be valid unless presented in writing within thirty days after sending the message.

"The company will be responsible to the limit of its lines only, for messages destined beyond, but will act as sender's agent to deliver the message to connecting companies or carriers, if desired, without charge and without liability."

Defendant moved for a non-suit. The motion was overruled. The jury found for the plaintiff $451.98, with interest. Defendant moved for a new trial, on the following grounds:

(1.) Because the court erred in overruling the demurrer to the declaration.

(2.) Because the court allowed the telegrams delivered by the plaintiff to the defendant for transmission to go to the jury as evidence, over the objection of the defendant

that the telegrams were at variance with and materially differed from the telegrams set out in plaintiff's declaration.

(3.) Because the court allowed the plaintiff, over objection of defendant, to amend his declaration, by inserting therein the printed matter of the original messages, the negligent transmission of which was the ground of plaintiff's action.

(4.) Because the court overruled the demurrer to the declaration as amended.·

(5.) Because the court overruled the motion for a nonsuit.

(6.) Because the court charged as follows : "I charge you that the telegraph company was, in undertaking to deliver these messages for a valuable consideration, the agent of Mr. Shotter, and as his agent delivered the dispatches. If the company was known to be his agent for delivering messages to the parties receiving them, and the parties receiving them knew that it was a, telegraph company receiving and delivering messages for the public for a pecuniary consideration, then they had the right to consider the company as Shotter's agent, and the messages as delivered would bind Mr. Shotter."

(7.) Because the court charged the jury as follows: "If the offers received from the agent (meaning the telegraph company), were 60 cents and 54 cents, and no circumstances about them to put an ordinary business man on notice of fraud or bad faith, and if they relied on and accepted these offers, Mr. Shotter was bound by their acceptance, and when he sent the goods and ascertained that this state of facts existed, he was bound to let them have the property at the price he had agreed to let them have it at, through his agent."

(8.) Because the court charged the jury as follows: "If you find that the sales were made at the rates the telegraph company gave, the difference between them and the price which was offered is the measure of damages in the

v 71–49

case, and if proved to your satisfaction, may be recovered."

(9.) Because the court erred in not charging the jury as follows: "That under the statement of facts (that is, the statement of facts set up in the charge), by reason of the mutual mistake of the plaintiff and DeGolyer & Bro. and A. Burdsal, respectively, as to the price, there was no valid and binding contract of sale between the parties, and that the plaintiff was not bound in law to complete the same, and thereby let his property go for a less price than he agreed to take ; or if the plaintiff voluntarily completed said contract, he could not hold the defendant liable for any additional loss or damage increased thereby. That where an order or offer is sent by telegram, the telegraph company is only the agent to transmit the message in the terms in which it is delivered to it, and the sender is not responsible for the mistake of the telegraph clerk."

(10.) Because the court erred in not charging, under said statement of facts, as follows : That both the title to and possession of the turpentine remained with the plaintiff until the payment of the drafts attached to the bills of lading.

(11.) Because the verdict is contrary to the evidence, and without evidence to support it.

(12.) Because the court charged as follows: "The effect of these limitations is that the company says it will send night messages at reduced rates, but will not be responsible for errors unless the message is repeated, for which extra compensation is charged. When a person undertakes to do a thing, he undertakes to do that thing correctly, and notwithstanding anything the telegraph company may have put upon its printed forms, it is responsible for any error or mistake which occurs by the negligence or default of its employés. And I charge you in the language of the Supreme Court—"

[Here the court read from the case of *The Western Union Telegraph Company vs. Blanchard, Williams & Co.*, the first, second and third head notes, 68 *Ga.*, 299.]

"Perhaps the telegraph company may have the right to say they will charge you so much for the message, and make the prices sufficient to make the transmission accurate; but they cannot undertake to say, we will deliver your message at such and such a price, but we will not insure accuracy without we repeat, and if we repeat. we will charge you an extra price.

"Gentlemen, my attention is called to the fact that the decision I have just read is in regard to day messages. No limitation which a company may put in its messages will relieve it from the gross negligence of its employés. Now, what is gross negligence? It is such as would not be committed by a person of average prudence and care, and it is. for you to determine whether it would be gross negligence for them to make such mistakes as are alleged in the declaration."

The motion was overruled, and defendant excepted.

CHARLTON & MACKALL, for plaintiff in error.

LAWTON & CUNNINGHAM, for defendant.

JACKSON, Chief Justice.

This action was brought by Shotter & Co. against the Western Union Telegraph Company, to recover damages. for losses occasioned by errors of the company in the transmission of messages, whereby the plaintiffs were made to offer to certain parties in Chicago and Indianapolis car loads of turpentine at a much lower figure than the sum intended to be offered, which offer, thus by palpable error sent, was accepted; the plaintiffs were bound by the offer, and furnished the turpentine at the lower price, and were thus damaged to the amount of difference between the lower price received and the higher price which the turpentine was worth. Under the charge of the court, the jury returned a verdict giving damages to the extent of the difference between the price actually

sent by the company and that written and delivered to the company by the plaintiffs to be sent. A motion was made for a new trial on various grounds therein alleged, and the denial of that motion on those grounds is the error assigned.

1. A telegraph company is responsible for the gross negligence of its agents in transmitting messages, in damages, to the party injured thereby, and the court did not err in overruling the demurrer. 58 *Ga.*, 433; 68 *Ib.*, 300.

2. An amendment correcting the error in language of the telegram set out in the declaration, or in figures and conditions thereon, was properly allowed, so as to cover the objection to admissibility of the telegrams as set out. When amended, the objection was gone. Our amendatory statutes are very broad. Code, §3479. No new cause of action was set out, and the amendment was really hardly material, except technically to harmonize the *allegata* and *probata*.

3. It is wholly immaterial what condition it put upon its printed heading of messages, so far as its liability for negligence is concerned. It is bound to discharge its duty to the public with skill and diligence, and to be accurate in the discharge of such duty, even if to repeat the message be necessary to insure accuracy. 68 *Ga.*, 300. In the case at bar it was guilty of the very grossest negligence. It made a palpable and material mistake in two telegrams sent by the plaintiffs the same night; in one of which it made " sixty-four" read " fifty-four," and in the other it made "sixty-four" read "sixty," thus leaving out one word, though charging for ten, and sending but nine words. That the defendant is liable for damages, under the decisions of this court, needs no argument, and that it cannot defend by an effort to limit that liability at the expense of the diligence which public policy demands, is as little subject to cavil or question.

4. What, then, is the measure of the damages to which the plaintiffs are entitled for this gross negligence?

The answer is, just what the plaintiff lost thereby. What did the plaintiff lose? We do not see that he lost the difference between what he actually took from his correspondents in Chicago and Indianapolis and what he really had intended to offer the turpentine to them at, because there is no evidence that they would have given him what he had intended to offer it at, and would have offered it at but for the gross negligence of the company. The measure of damages is the difference between what he took from the correspondents at Chicago and Indianapolis and what he could have got at the time the erroneous dis patch was delivered, from them or from any other pur· chaser in Chicago and Indianapolis; or in other words, the difference between what he took from them and the market price at that time in Chicago and Indianapolis, together with the toll for sending the dispatches and the cost of exchange. It is presumed he could have got the market price in those cities, and as, by reason of this mistake, he settled with his correspondents at what the erro· neous telegram offered to sell the turpentine to them, we think that the company is liable for the difference between the sum at which he did settle and the market price of the turpentine in those cities.

5. But the plaintiff in error raises the question that the defendant in error, plaintiff below, was not obliged to let the turpentine go at that price; that he was not bound by the mistake of the telegraph operators, and voluntarily let the turpentine go too low. Whether the telegraphic operator be the agent of the sender of a dispatch, so as to bind him, is a debatable question in the courts, the English authorities being to the effect that he is not; and the American mainly that he is. We agree with the American doctrine, at least to the extent that commercial transactions being now conducted to so great an extent through the telegraph, a merchant would lose business and credit if he did not settle in accordance with the offer actually made, though by mistake of the agency he used to convey it,

and when he does so settle in good faith, and is induced to do so by the negligence of the telegraphic company, through its servants, that company should respond to him in damages, whether absolutely bound by his contract or not; and that the measure of his recovery from the company should be as stated above.

The English authorities seem to rest on the connection of the telegraphic lines there with the post-office, and to go on the principle that the government is not responsible for the negligence of a clerk. See note to Verdin Brothers vs Robertson, Allen's Tel. Cases, 697–699, and Henkel vs. Pope, Ib., 456, 457, note. And as in this country the company is a private corporation, acting as a bailee or agent or carrier, to transmit offers to sell and answers to buy, it would seem that both sides of the water may be held not to collide in their judgment on the law.

For American authorities, see Allen's Tel. Cases, 157, 330, 699, note; 40 Wis., 431.

For English authorities, see Allen's Tel. Cases, 567, 697.

For summary of cases bearing on measure of damages, see 27 Am. R., 485; Allen's Tel. Cases, 653 to 663, in a note to Baldwin vs. U. S. Tel. Co.

Inasmuch as the court charged the jury that the measure of damages in the case was "the difference between the rates which the telegraph company gave and the price which was offered," evidently by the seller, and there is no evidence that the purchasers at Chicago and Indianapolis would have given the price offered, or what was the market value or price at the time, either at Chicago or Indianapolis, and the jury found according to that charge, and as we hold that the measure of damages is the difference between the price offered by the error of the telegram and the market value at those points; that is, what the seller could have got there, we are constrained to grant a new trial, on the error in respect to the measure of damages alone.

Judgment reversed.