## WESTERN UNION TELEGRAPH COMPANY *v.* FLINT RIVER LUMBER COMPANY.

1. When one requests another to make an offer for the sale of an article, and the offer is made by telegraph, and the telegram as delivered to the addressee is materially different from the telegram delivered for transmission, the sender is bound by the terms of the proposal as contained in the telegram delivered to the addressee, and may recover from the telegraph company any damages which he has sustained in fulfilling a contract resulting from an acceptance of such proposal.

2. The evidence authorized the judgment rendered by the judge of the city court; there was no error committed during the trial of the case which would have required a reversal of his judgment; and therefore the petition for certiorari was properly overruled.

Argued January 7,—Decided February 4, 1902.

Certiorari. Before Judge Spence. Decatur superior court. May 20, 1901.

*W. M. Hammond* and *A. H. Russell*, for plaintiff in error.
*B. B. Bower Jr.*, contra.

COBB, J. The Flint River Lumber Company brought suit against the Western Union Telegraph Company in the city court of Decatur county, alleging in its petition, in substance, as follows: On May 31, 1897, the plaintiff, in answer to a telegraphic inquiry from R. B. Currier, of Springfield, Massachusetts, asking for prices of lumber in five car-load lots, delivered to the defendant, to be transmitted to Currier, a telegram which read as follows: "For quick shipment and quick net cash will make price twenty fifty; answer." By a mistake of the telegraph company in transmitting the telegram, when delivered to Currier it read: "For quick shipment and quick net cash will make price twenty five; answer." The meaning of this telegram, as it was interpreted by lumbermen, and in the light of the terms of the telegram to which it was an answer, as well as in the light of the fact that the market price of lumber was at that time nowhere near $25 per thousand, would be that the plaintiff offered to Currier the lumber at the price of $20 per thousand feet in five car-load lots. The offer as thus understood by Currier was accepted by him and the lumber shipped, and when demand was made for payment the telegram with the error in it was displayed; and plaintiff avers that by reason of this error, which

was brought about by the carelessness of the defendant, it has suffered a loss of $45, which the defendant refuses to pay. The defendant filed demurrers both general and special, which were overruled. The case came to trial upon the petition and answer, was submitted to the judge without the intervention of a jury, and he rendered judgment for the plaintiff for $44.20. The case was carried to the superior court by certiorari. Upon the hearing in that court the certiorari was overruled, and to this judgment the defendant excepted. The demurrer raises what is the controlling question in the case, and that is, whether the plaintiff was legally bound to deliver to Currier the five car-loads of lumber at the price stated in the telegram as it was delivered to him, that is, at the rate of $20 per thousand feet, when the offer made by the plaintiff was really one to sell the lumber at $20.50 per thousand feet. Is a telegraph company such an agent of the sender of a telegram that he would be bound to the addressee upon whatever terms the telegram as delivered to him contained, notwithstanding the telegram as originally delivered to the telegraph company was materially different from that delivered to the addressee? On this question the authorities are not agreed. There are some holding that the telegraph company is not the agent of the sender but is an independent principal, and that where a mistake in transmission is made, there is no valid contract between the parties, for the reason that the minds of the parties have never met. There are others holding that even if the telegraph company is the agent of the sender, the agency thus created is special, and that it is not within the scope of the authority of such an agent to make any other contract than the one contained in the telegram delivered to the telegraph company; and that therefore the sender is not bound upon the contract unless the telegram is correctly transmitted. Other authorities hold, without qualification, that the telegraph company is the agent of the sender, and that he must stand by the proposition as embodied in the message delivered by his agent, and make his demand upon it for the damages which have been sustained by its neglect. Still others qualify this rule by saying that the party who first invites the use of the telegraphic agency impliedly undertakes to assume the risk of mistakes by the telegraph company. See Joyce, Electric Law, §§ 903–7. The author cited, after an elaborate discussion and a close examination into the question as to what is the relation be-

WESTERN UNION CO. *v.* LUMBER CO.

tween the telegraph company and the sender of a telegram, concludes in this language: "We must confess that we believe there can be no logical deduction from the various principles involved, as to what should be the rule. The determination must contain some element of what is called a 'moral' ground, or must be an arbitrary, absolute one." § 907. See also an article written by M. J. Stevenson, Esq., in 54 Central Law Journal, 23.

If the question were an open one in this State, we must admit that upon principle there would be serious difficulties in the way of holding that a telegraph company is such an agent of the sender of a telegram as that he would be bound by the terms of the telegram delivered to the addressee, when they are materially different from the terms of the telegram as delivered for transmission. If the telegraph company is an agent at all, it must be either a general agent or a special agent. It can not, of course, be contended that it is in any sense a general agent to make contracts in behalf of those who use the telegraph as a means of communication, and the agency must therefore be of a character known to the law as a special agency. If this is true, the agency being of a limited character, it is created for the purpose only of communicating to the addressee the exact contents of the telegram as delivered to it, and communicating a telegram containing anything else is not within the scope of the authority of such an agent. If we were called upon to determine this question solely upon authority, we would also be met with serious difficulties; for the courts of England all seem to hold that the telegraph company is not the agent of the sender and that the sender is not bound by the mistakes of such company, and courts of respectable standing in this country disagree as to what is the relation between the telegraph company and the sender of a telegram. When one delivers a telegram to a telegraph company, the undertaking of the company is, of course, to transmit and deliver promptly and accurately, and the sender would have a right of action against the telegraph company for any damages he has sustained on account of its failure to transmit the telegram promptly and accurately, and if no actual damage were sustained, he would be entitled to at least nominal damages for the breach of the contract. But the question in the present case is, when one asks another to make an offer for the sale of an article, and the offer thus requested is made by telegraph, and the telegraph company

transmits a different offer from the one delivered to it for transmission, is the person making the offer bound by the terms of the offer delivered by the telegraph company, notwithstanding it may be materially different from the terms of the offer as delivered to the company for transmission ? In other words, if a message is delivered to a telegraph company containing an offer to sell merchandise at a certain price, and the company so transmits and delivers the message as to make it contain an offer to sell at a less price, is the sender bound to furnish the merchandise at the latter price ? If so, then of course it would follow that whatever damage he has sustained by a compliance with the offer as actually delivered to the addressee of the telegram would be properly chargeable to the telegraph company on account of the breach of its contract. In his work on Electric Law, referred to above, Mr. Joyce says : " If the telegraph company is not the agent of the sender, or of the party who invites the use of this instrumentality, then the telegram of acceptance, as delivered for transmission, and not the one delivered to the addressee, binds. The latter, when erroneous, is not the real acceptance, the minds of the parties have never met, and there is no contract; this would compel the addressee to act at his peril, or have the message repeated, at perhaps a loss of time which might make the contract valueless." § 906.

The present case, we think, is controlled, at least in principle, by the ruling made by this court in the case of *Western Union Telegraph Company* v. *Shotter*, 71 *Ga.* 760. In that case Shotter brought an action against the telegraph company for damages on account of mistakes made in the transmission of a telegram. He delivered a telegram to the defendant, addressed to a party in Chicago, which read, " Can deliver hundred turpentine sixty-four, immediate reply." The telegram as delivered to the addressee read sixty instead of sixty-four, and a reply was sent to ship " one hundred barrels as quoted." Plaintiff shipped the one hundred barrels, and upon demand for payment the addressee refused to pay more than sixty cents per gallon for the turpentine, and an action was brought against the telegraph company for the difference between the price stated in the telegram as delivered to the company and the price stated in the one as delivered to the addressee. The defendant demurred to the plaintiff's petition, on the ground that the damages were not the legal and natural consequence of the

failure to transmit the telegram correctly, but were the result of the plaintiff's voluntary and gratuitous act in accepting less for the turpentine than he had offered to accept.    The court overruled the demurrer.    In the opinion Mr. Chief Justice Jackson says: " But the plaintiff in error raises the question that the defendant in error, plaintiff below, was not obliged to let the turpentine go at that price ; that he was not bound by the mistake of the telegraph operators, and voluntarily let the turpentine go too low.    Whether the telegraphic operator be the agent of the sender of a dispatch, so as to bind him, is a debatable question in the courts, the English authorities being to the effect that he is not; and the American mainly that he is.    We agree with the American doctrine, at least to the extent that commercial transactions being now conducted to so great an extent through the telegraph, a merchant would lose business and credit if he did not settle in accordance with the offer actually made, though by mistake of the agency he used to convey it, and when he does so settle in good faith, and is induced to do so by the negligence of the telegraphic company, through its servants, that company should respond to him in damages, whether absolutely bound by his contract or not; and that the measure of his recovery from the company should be as stated above."    It seems to us that the ruling just referred to is absolutely controlling in the present case; and while the learned Chief Justice in some of the language used rather casts a doubt upon whether the sender is absolutely bound by the terms of the telegram as erroneously transmitted and delivered to the addressee, still the decision in that case held the sender bound and allowed him to recover from the telegraph company on the ground that he was bound and that the addressee could have held him liable on the contract, and that he was not entitled to recover from the addressee any more than the amount stated in the telegram as delivered to him, and being so bound, the telegraph company was liable for the difference between the price stated in the telegram delivered for transmission and that stated in the telegram delivered to the addressee.    But no matter how we view the ruling in the *Shotter* case, it is directly controlling in the present case; for, if the sender was bound by the terms of the telegram as delivered to the addressee, upon the principle of the *Shotter* case, the plaintiff in the present case would be entitled to recover; or if, as intimated by the learned Chief Justice, Shotter

might not have been absolutely bound by the terms of the message delivered to his addressee, he certainly was as much bound as was the plaintiff in the present case. The *Shotter* case is referred to by Mr. Joyce, and is construed by him to be a ruling that the telegraph operator is the agent of the sender of the telegram. § 903.

We have been unable to find any other decisions of this court bearing even indirectly upon the question now under consideration. It seems that the ruling made in this case has from the time of its rendition been silently acquiesced in by the profession, and the General Assembly has not during that time seen fit to change the rule therein laid down. For nearly twenty years this rule has been the law of this State, and after this lapse of time we would not feel justified in overruling the decision, even if a review of the case had been requested, although we may have some doubt as to the conclusion therein reached, both upon principle and authority. There was no request to review the case, and we could not do otherwise than follow it in the present case, even if we were disposed to hold to the contrary. It may be said, however, that the decision, though possibly subject to the criticism that it is not entirely consonant with established principles of law, does have for its foundation an admixture of justice and natural equity, an adherence to both of which was a controlling characteristic of the able and learned Chief Justice who rendered the opinion, especially in cases where he felt that justice would be defeated by applying too strictly the rigid rules of the common law to the conditions and agencies of modern times, which were never for a moment dreamed of by the compilers and expounders of the ancient English law. We are therefore of opinion that the petition set forth a cause of action, and was not subject to any of the objections set up in the demurrers.

2. Currier telegraphed to the plaintiff as follows: "Can you say twenty dollars for five cars number one, reply?" The telegram received in reply read, "For quick shipment and quick net cash make price twenty five." On the trial the court allowed, over objection of the defendant, parol evidence to be introduced to show what was the meaning among lumbermen of the telegram as delivered to Currier, and the testimony so introduced showed that the telegram would be interpreted by men engaged in the lumber business as an offer to sell five cars of lumber at twenty dollars per thousand feet. This ruling is one of the errors assigned in the petition for certio-

rari. When the telegram from Currier to the plaintiff and the telegram which was delivered to Currier are read together, no other conclusion can be reached than that the plaintiff was offering to sell five cars of lumber at twenty dollars per thousand feet, when these telegrams are considered in connection with evidence which was uncontradicted and which was admitted without objection, showing the character of the transaction to which the telegrams related. The words "twenty" and "five," in the telegram sent by Currier, referred respectively to the price per thousand feet and the number of cars, and it was perfectly reasonable for him to construe the telegram received in response thereto as using these words in the same sense in which they were used in the telegram sent by him. The parol testimony showed simply that this was the proper interpretation of the telegram by men in the lumber business; and hence, even if the testimony was for any reason objectionable, the admission of it was harmless. In addition to this, in the light of the fact, which was shown by the evidence, that at the dates of the telegrams the market price of lumber was nowhere in the neighborhood of twenty-five dollars per thousand feet, which fact was known to both parties, it was more reasonable to construe the words "twenty" and "five" in the telegram received as referring respectively to the price of the lumber and number of cars than to construe the two words together as referring to price only. As a reasonable construction of the telegram was that plaintiff offered to sell five cars of lumber at twenty dollars per thousand feet, there was nothing in the terms of the telegram which required Currier to have the same repeated. In the case of *Manly Mfg. Co.* v. *Western Union Tel. Co.*, 105 *Ga.* 235, the terms of the telegram were ambiguous and uncertain, and this court held that in such a case diligence required the addressee to have the same repeated before acting on it.

The evidence authorized the judgment rendered by the judge of the city court; there was no material variance between the allegations of the petition and the proof; there was no error committed which required a reversal of the judgment of the city court; and the judge of the superior court did not err in overruling the petition for certiorari.

*Judgment affirmed. All the Justices concurring.*