### 6698

### BOWIE v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—TELEPHONE.—There being no evidence in this case that the sender assented to the stipulation on the back of a telegraph blank that no responsibility attaches until messages are presented and accepted at one of its transmitting offices or that he knew it was written on such blank or that he intended it to be so written, there is no ground for the company to say a delivery and acceptance over a telephone kept in its office was not a proper delivery.

2. IBID.—DAMAGES—CONTRACTS.—Under the facts in this case, the measure of damages for negligence in the delivery of a telegram is the difference between the price stated in the telegram and the price the plaintiff was obliged to pay for the flour, there being no other evidence as to market value.

Rule of measure of damages in cases of breach of contract stated.

Before ALDRICH, J., Abbeville, October term, 1906. Affirmed.

Action by J. S. Bowie against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley,* and *Frank B. Gary,* for appellant. *Mr. Evans* cites: *Plaintiff is bound by the measure of damages applicable between the sender and defendant:* 71 Ga., 760; 79 Me., 493; 75 S. C., 342. *Selling at a profit is special damages, and should be alleged:* 40 S. C., 524; 71 S. C., 86; 18 Eng. C. L., 493; 9 Exchg.,

341; 72 S. C., 290; 33 Wis., 558; 53 S. C., 410; 70 S. C., 16; 75 S. C., 129; 5 Ency. P. & P., 742, note; 13 Cyc., 54. *No evidence that plaintiff would not have bought at $4.60:* 70 S. C., 16; 17 S. C., 116.    *The rule of company requires messages to be delivered in writing.    If agent of defendant receive it over 'phone, he does so as the agent of the plaintiff:* 70 S. C., 543; 63 Tex., 668; 64 Tex., 220; 5 Tex. Civ. App., 349; 24 Fed. R., 119; 92 Ga., 613; 39 Fed. R., 181; 37 S. C., 452.

*Messrs. J. Fraser Lyon* and *M. P. DeBruhl,* contra, oral argument.

October 31, 1907.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    The defendant telegraph company, on August 3, 1904, delivered to the plaintiff, a wholesale grocer and commission merchant, at Abbeville, S. C., a telegram offering flour for sale in these words:

"El Reno, O. T., Aug. 3, 1904.
"To J. S. Bowie, Abbeville, S. C.
"Will book at four-thirty in sacks delivered.    Our lowest limit.    Market advancing rapidly.
"El Reno Mill E. Company."

The plaintiff immediately telegraphed acceptance in these words:

"August 3, 1904.
"To El Reno Mill & Elevator Co., El Reno, Okla. T.
"Accept three hundred barrels Wigwam as quoted.
"Writing.                                J. S. Bowie."

The plaintiff, on the faith of his trade, immediately resold the flour on the Abbeville market at four dollars and forty cents, being a profit of ten cents per barrel on the price stated in the telegram delivered.    When the flour arrived, the plaintiff found the El Reno Mill and Elevator Company

had drawn a draft, with the bill of lading attached, for the price, computed at four-sixty a barrel instead of four-thirty, as stated in the telegram received. The plaintiff paid the draft and delivered the flour on his contracts of sale. He then brought this action, alleging the telegram as delivered to the defendant company was an offer to sell flour at four dollars and sixty cents per barrel, and that he had been misled and damaged ninety dollars by reason of the defendant's negligence in changing the offer in transmission to four dollars and thirty cents per barrel. The verdict was for ninety dollars, the whole amount claimed.

The message having been sent to the defendant company and accepted by its agent at El Reno by telephone, the defendant relied on this stipulation in its message blank to exempt it from liability for any mistake in the transmission: "No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender." On this point the Circuit Judge, at the request of the plaintiff, gave this instruction: "If a message is received at the office of a telegraph company over a telephone, and is transmitted by the telegraph company to the sendee, it is presumed to be properly delivered to and accepted by the telegraph company for transmission." There was no evidence that the sender assented to the stipulation or knew it was written on the company's blank, or that he intended or expected the message to be written on the blank. In the absence of such evidence, we can see no ground whatever for the company to say a delivery and acceptance over a telephone kept in its office was not a proper delivery. Certainly, the defendant has no right to complain when the Circuit Judge, assuming that there might be some evidence bringing the stipulation home to the sender, in response to the defendant's request, charged if the regulation on the message blank was reasonable, and

brought to the knowledge of the sender, he would be bound by it and the company would incur no liability in reference to the telegram until it had been presented and accepted at one of its transmitting offices, unless the company had seen fit to waive the regulation by inviting or encouraging the sender or the public to deliver to it messages in some other way.

The Court instructed the jury if the defendant did not make the mistake in the telegram, then it was not liable at all. The verdict for any amount is, therefore, a finding that the mistake was made by the defendant.

The other question in the cause is, whether the following instruction as to the measure of damages was correct under the facts of this case: "If the jury find the plaintiff bought flour on faith of a telegram in which it was offered at four dollars and thirty cents per barrel, and afterwards had to pay four dollars and sixty cents for the same flour, the telegraph company will have to pay plaintiff the difference between the price actually paid and the price stated in the message, if the defendant made a mistake in sending the price in the message at four-thirty when it should have been four-sixty." To lay down any formula by which damages may be measured in all cases for failure to deliver telegrams or mistakes in their transmission is impossible. The direct damages to be anticipated, as well as those which are actually produced by such failures and mistakes, are as various as the business affairs which are transacted by telegraph. There are, however, some principles of general application, though it would not be safe to say all of them apply to every case. The doctrine thus stated in *Roper* v. *Johnson,* L. R., 8, C. P., 180, 23 English Ruling Cases, 545, as to the measure of damages for breach of contract, is generally accepted: "The general rule as to damages for breach of a contract is, that the plaintiff is to be compensated for the difference of his position from what it would have been if the contract had been performed. In the ordinary case of a contract to deliver marketable goods

on a given day, the measure of damages would be the difference between the contract price and the market price on that day." *Manufacturing Co.* v. *Iron Works,* 75 S. C., 349; *Wallingford* v. *Telegraph Co.,* 53 S. C., 410, 31 S. E., 275; *Brooke* v. *Laurens Milling Co., ante,* 200.

The primary end to be kept in view is compensation to the party against whom the breach has been committed for the difference in his position from what it would have been if the contract had been performed. Market values are only factors used in arriving at this difference. The reason for the use of market values is that goods are worth what they will bring in the market, not what the buyer or seller may think they ought to bring. Hence, he who breaches a contract must pay as damages what the other party could and would have realized in view of existing market conditions if the contract had been performed. This test of the measure of damages is not affected by the fact that part of the difference between the contract price and the market price would be profit. The parties are entitled to all legitimate benefits of the contract, including profits. This general rule is applicable to damages for mistakes in communicating contracts by telegraph, and it was the basis of the decision in *Hayes* v. *Tel. Co.,* 70 S. C., 16, 21, 48 S. E., 608, 67 L. R. A., 481. There the evidence was that by the mistake in the telegram the plaintiffs had been misled into buying mules which, though actually superior in quality, were worth no more on the Greenwood market than other mules which, in the telegram as written, were quoted ten dollars cheaper, and which plaintiffs would have bought if the telegram had been properly transmitted. The Court there said: "Therefore, whether we regard the effect on the plaintiffs as a loss of profit, or the fruitless expenditure of money on the faith of the telegram, the result is the same. The difference in the price paid and the price stated in the telegram as delivered was, under the facts of this case, the true measure of damages." So, also, we think that under the facts of this case the difference between the price as

stated in the telegram and the price plaintiff was obliged to pay is the true measure of damages. When the telegraph company by its negligence deprived the plaintiff of the benefit of his bargain, it must compensate him for the loss of it by the same measure as would have been applied to the seller if the breach had been on the part of the seller. Misled by defendant's error, the plaintiff had resold the goods, and there was no evidence that he could have obtained for delivery on his contract flour of the same quality on the Abbeville market at less than the sum called for by the draft which he was obliged to pay in order to obtain this lot. The only evidence as to the market value of the flour was the real quotation of flour in the telegram as delivered at El Reno to the defendant's agent. The price at which the plaintiff sold was not evidence, because that was clearly based on the incorrect quotation contained in the telegram as delivered to him. As the mill's quotation for flour delivered in Abbeville was the only evidence of market value at that place, and the good faith and correctness of that quotation was not drawn in question by defendant, we think it was not error for the Circuit Judge to charge the jury on the assumption that it was the true market value.

We cite only a few of the many authorities supporting the conclusion we have reached. *Pepper* v. *Tel. Co.* (Tenn.), 10 Am. St., 710; *W. U. Tel. Co.* v. *Flint River L. Co.* (Ga.), 40 S. E., 815, 88 Am. St., 36; *W. U. Tel. Co.* v. *Nye & S. G. Co.* (Neb.), 63 L. R. A., 803; Joyce on Electric Law, 964 and 974; *Reed* v. *Tel. Co.* (Mo.), 34 L. R. A., 492; Jones on Telegraph Companies, 544; *W. U. Tel. Co.* v. *Stevenson* (Pa.), 15 Am. St., 687; *W. U. Tel. Co.* v. *DuBois* (Ill.), 15 Am. St., 109; *Pearsall* v. *W. U. Tel. Co.* (N. Y.), 21 Am. St., 662.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.