7127

## MIMS v. WESTERN UNION TEL. CO.

1. Telegraph Companies—Evidence—Memoranda.—Where a girl fifteen years of age appears at the office of a telegraph company and informs the agent she wishes to send a message and reads the message from a memorandum book in her hand, which the agent writes down, the book may be introduced to show the message delivered to the company.

2. Ibid.—Principal and Agent.—Under evidence that the sender of a message dictated it to a girl who wrote it down and read it to the company's agent, there being no evidence that he had any notice or knowledge of the regulations on the back of blank messages, and there being uncontradicted evidence that the girl had no notice or knowledge thereof, it was properly held the agent of the company who took the message from the girl was in that act the agent of the company, and not of the sender as stipulated on the message blanks.

3. Ibid.—The telegram sent was properly admitted here to show the mistake made by the agent in writing down the address, and not as the telegram delivered by the sender.

4. Evidence—Conversation.—No error here in excluding a conversation between an agent of the defendant company and a person whose name he does not know where it is not shown his statements could in any way affect the rights of the plaintiff or in any way bind them.

5. Telegraph Companies—Punitive Damages.—Where there is evidence tending to show a death message was wrongly addressed by the agents of the carrier and upon inquiry from the terminal office for a better address, no effort is made to find the sender, who had lived in the city of the sending office for a number of years and at this time in his own house, it was proper to submit to the jury the issue of wantonness.

Before Klugh, J., Greenville, March term, 1908. Affirmed.

Action by Paul Mims against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, John Gary Evans* and *Joseph A. McCullough, for appellant. Messrs. McCullough* and

*Evans* cite: *Memoranda evidence improperly admitted:* Joyce on Elec. L., Par. 1039. *Agent in writing message was agent of sender:* 27 Ency., 1033; 64 Tex., 220; 63 Tex., 668; 90 S. W., 610; 74 Am. St. R., 394; 78 S. C., 424; 24 S. W., 86; 24 Fed., 119; 18 S. E., 1008; 16 S. E., 128; 69 S. W., 464; 72 N. Y. Supp., 634; 70 S. C., 543.

*Messrs. Cothran, Dean & Cothran,* contra, cite: *In writing the message the agent was the agent of the company:* 27 Ency., 1032; 74 Am. St. R., 394; 77 S. C., 181; 78 S. C., 426. *Message need not be in writing:* 79 N. E., 407. *Deprival of consolation and comfort from members of family in case of death proper to show mental suffering:* 72 S. C., 516; 77 S. C., 148.

April 9, 1909. The opinion of the Court was delivered by

Mr. Justice Woods. This appeal is from a judgment in favor of the plaintiff for mental anguish, arising from the failure to deliver a telegram. The complaint thus sets out the telegram and the relationship of the parties:

"That on September 26, 1906, Harrison Mims, father of the plaintiff, delivered to the agent of the defendant company at Greenville, South Carolina, a certain telegram signed by him and addressed to the plaintiff, Paul Mims, care Columbia Hotel, Columbia, South Carolina, and reading in substance as follows: 'Your Brother Frank died suddenly last night. Come at once.'" The contention of the defendant, under the general denial of the answer, was that the telegram was not delivered because the sender made the mistake of having it addressed to the plaintiff, Columbia Hotel, Augusta, Georgia, instead of Columbia Hotel, Columbia, South Carolina.

The questions made by the numerous exceptions will be considered as presented in the argument of defendant's counsel. There was evidence that when Frank Mims died

his father, Harrison Mims, desiring to telegraph the plaintiff, Frank's brother, to come. and being unable to write, dictated the telegram to his grand-niece, Annie Early, a negro girl about fifteen years old, who wrote it down in a memorandum book. Annie testified that when she went to the telegraph office she told the agent she wanted to send a message, and he wrote the telegram as she read it from the book; that the message, as read to the agent, was addressed to the Columbia Hotel, Columbia, S. C. The admission of this memorandum book as evidence is the first error assigned in the exceptions.

It is true a copy of a telegram, like copies of other instruments, is admissible in evidence only on proof of loss of the original; and it is also true, that a writing not brought to the notice of a telegraph company is not admissible as the original of a message delivered to it. But in this instance there was evidence that the girl held the book in her hand, and from it read the message to the receiving agent of the telegraph company, thus giving him express notice that she was reading a written message, and affording him full opportunity to examine it. The girl testified further, that she did not know she was allowed to write the message on a telegraph blank and deliver it to the agent, but supposed it to be the business of the agent to write it. Certainly the age of the child was sufficient to put the agent on notice of her lack of familiarity with the business methods of telegraph companies. Under the circumstances, the act of the agent of the company in choosing not to require the message to be written by the child on one of its blanks, but to take it as read from the book, was evidence of consent that the message, as written in the book and read to the agent, should be the telegram received by the company. In this view the telegram, as written in the book, was properly received in evidence.

This conclusion would dispose of the position taken by defendant, that there was no evidence that the defendant

ever accepted for transmission a telegram directed to Columbia, S. C., but for the position taken by the defendant, that in receiving a message in this way the person who received it acted as agent of the sender and not of the company, notwithstanding the fact that he was placed by defendant on its side of the desk for the purpose of receiving messages from the public. The reason given for this position is, that the defendant's message blank contains the stipulation: "No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose, as agent of the sender."

This requirement is binding on every one who assents to it by writing his message on the blank, and perhaps by every one who is capable of complying with the requirement, and has notice of it, when dealing with the company; though, of course, the company may waive the requirement. The telegraph company may ordinarily require· assent to this or any other reasonable regulation by requiring the sender, when capable of doing so, to write the message on its blank, or by any other reasonable requirement. So if one, with notice of a requirement that messages must be presented in writing at the company's office, for his own convenience, induces the agent to violate the regulation of the company, it may well be held that the company's agent in violating its rules, at the instance of the sender, ceases to be the company's agent and becomes, in the act of violation, the sender's agent. It was on this principle that it was held in the case of *Carroll* v. *So. Exp. Co.*, 37 S. C., 452, 16 S. E., 128, that an express agent who violates the rules of the company by procurement of a consignee, for his convenience, becomes the agent of the consignee. But there is no presumption that the public, dealing with the defendant as a public service corporation, has notice of stipulations and

regulations with respect to the conduct of its business, merely by reason of the fact that they are printed on defendant's message blanks. *Bowie* v. *Western Union Tel. Co.,* 78 S. C., 425, 59 S. E., 65. In this case there was no evidence that Harrison Mims, in whose name the message was sent, had any notice of the company's requirement here relied on to exempt it from liability; and there was direct and uncontradicted evidence that the girl, who went to the telegraph office and communicated the message to the agent, had no notice of the requirement. There was, therefore, under the principles we have stated, no evidence warranting the Court in holding that the agent of the defendant, who received the message, received it as the agent of the sender; and the exceptions on this subject, relating to the refusal to grant a nonsuit and to the charge, must be overruled.

There is no foundation for the assignment of error on account of the admission in evidence of the telegram, as taken down by the agent, addressed to Augusta, Ga., for the reason that it was admitted as evidence of the mistake made by the agent, and not as the telegram delivered by the sender to be transmitted to plaintiff.

The defendant next complains that the Circuit Court should have allowed its agent, Cason, to testify to a conversation, concerning the telegram, with a person described by him as a "colored man." The witness could not tell who the colored man was, and there was nothing whatever to indicate that his statements could affect the rights of the plaintiff or in any way bind him. For this reason, there was no error in excluding the conversation.

The motion for nonsuit as to the cause of action for punitive damages was properly refused. The message was received by the defendant at 10:46 a. m., 26th September, 1906; reached Augusta at 11:12; and a service message, which left Augusta at 11:32 p. m., was received by the sending operator, informing him there was no Columbia Hotel in Augusta, and asking him for a better

address. The importance of the telegram was evident on its face; and Harrison. Mims, the sender of the telegram, had been a resident of Greenville for many years, and at the time of this occurrence lived in his own house; yet there is no evidence that the agent made any effort to find him and get the right address, or even to notify him that the telegram had not been delivered. If there was a city directory in the office, it was not consulted, and the agent could not remember that he had sent out a messenger, though he thought it probable he had. While the mistake in copying the telegram, as dictated by the girl, might be attributed to negligence or inadvertence, the evidence of failure to make any effort to correct the error was properly submitted to the jury for them to determine whether it showed wanton and reckless indifference to the duty which the defendant owed to the plaintiff.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.