# L. S. Friedman, trading as L. S. Friedman & Company, Defendant in Error, v. Western Union Telegraph Company, Plaintiff in Error.

## Gen. No. 20,499.

1. TELEGRAPHS AND TELEPHONES, § 20*—*what is duty of sender of telegram altered in transmission.* If an altered telegram is received and acted upon by the addressee before the discovery of the mistake, the sender of the telegram is thereafter only bound to take such steps to avoid loss as a reasonably prudent man would take to save himself, had the mistake or error been his own, and if he does this and a loss nevertheless ensues, the telegraph company is liable therefor.

2. TELEGRAPHS AND TELEPHONES, § 31*—*when judgment for damages supported by evidence.* Where a sender of a telegram, as a result of a mistake in such message, was compelled to purchase a dozen suits and was able to sell only six of them, a judgment representing the difference in what he paid for the suits and what he was able to receive for them was supported by the evidence, which was uncontradicted.

3. APPEAL AND ERROR, § 1709*—*when remittitur is proper.* In an action for damages caused by a mistake in a telegram, whereby the sender of the message was compelled to purchase a dozen suits, and he testified that he was only able to sell six of such suits, and that the remainder in his possession were worth about $1 each, a judgment in his favor failing to allow credit for the value of such suits would be cured by a remittitur of six dollars.

Error to the Municipal Court of Chicago; the Hon. THOMAS F. SCULLY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed on remittitur; otherwise reversed and remanded. Opinion filed October 6, 1915. Rehearing denied October 15, 1915.

WEST & ECKHART, for plaintiff in error.

MOSES, ROSENTHAL & KENNEDY, for defendant in error; HAMILTON MOSES and SIGMUND W. DAVID, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

The plaintiff, L. S. Friedman, recovered a judgment against the Western Union Telegraph Company, in a

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tort action brought in the Municipal Court, to recover damages for the negligence of defendant in transmitting a telegraphic message from the plaintiff to J. M. Baruch of New York City. The defendant sued out this writ of error, and claims here that its negligence was not the proximate cause of the plaintiff's loss, and that, in any event, the damages awarded are excessive.

It appears from the evidence that the plaintiff is in the cloak and suit business in Chicago; that in October, 1912, he had purchased from Baruch, whose letter heads state that he is a "specialist in costumes and dresses," certain dresses, made of velvet and trimmed with fur, for $20 each and had sold them for $29.75 each; that on November 12, 1912, he wrote to Baruch that he would take a dozen more of the same kind of dresses if he could get them at the same price. To this letter Baruch replied, on November 13th, as follows:

"In regard to style No. 530 we note that you would like to have one dozen of these dresses if you would purchase them at $20.00; this is out of the question as the regular price of this dress was $35.00, but as it is late we will make you up this amount of dresses, delivery in one week at the special price of $23.50, 'net,' made of a combination of Velvet and Eponge. If this meets with your approval, kindly wire us day letter-gram, which will make a difference of two days in delivery, also mention color and sizes."

On November 14th, the plaintiff sent a "night-letter" to Baruch, in which, among other things, the plaintiff said: "Cannot use dresses at twenty-three fifty." When the message was delivered to the defendant in New York, it read as follows: "*Can* use dresses at twenty-three fifty." Upon the faith of this altered telegram, Baruch shipped twelve dresses of the style mentioned to the plaintiff in Chicago. The plaintiff sent them back, saying that he had not ordered them. Baruch returned them to the plaintiff. It is a fair inference from the evidence that the plaintiff first learned of the mistake in the telegram when he received

the dresses from Baruch the second time. He testified that he then went to see the defendant and talked to "a man up there in the office" who said defendant "would take care of the matter." Some correspondence followed between the plaintiff and Baruch, who insisted on payment according to the message delivered to him, and finally on December 21, 1912, the plaintiff put the dresses on sale after notice to the defendant. Six of the dresses were thus sold for $19.75 each, and according to the plaintiff's evidence, he was unable to sell the remainder at any price because the season for such dresses had passed. The amount of the judgment represents the difference between the amount paid to Baruch and the amount received by the plaintiff for the six dresses sold.

It is contended that the plaintiff was not bound to accept and pay for the goods shipped upon the strength of the altered telegram, and therefore, it is urged, if the plaintiff sustained any loss, such loss was proximately caused by his own voluntary act in paying for the dresses and not by the defendant's negligence in transmitting the telegram. This contention is based upon the theory that a telegraph company is not, as a matter of law, the agent of the sender of a telegram, but is an independent contractor, or "independent principal," for whose negligence the sender is not responsible.

Upon this question, there is a decided conflict of authority. One line of cases holds, without qualification, that a telegraph company is the agent of the party who employs it, and that the employer is bound by its acts, even though the message, as delivered, is different from the one sent. Among such cases are the following: *Western U. Tel. Co. v. Shotter*, 71 Ga. 760; *Sherrerd v. Western U. Tel. Co.*, 146 Wis. 197; *Ayer v. Western U. Tel. Co.*, 79 Mo. 493; and *Younker v. Western U. Tel. Co.*, 146 Iowa 499.

Another line of cases, possibly greater in number than the first, holds that a telegraph company is not the agent of either the sender or addressee of a telegram, but is a public carrier whose relation to the parties is that of an independent contractor. Of these, the following may be cited: *Pepper v. Western U. Tel. Co.,* 87 Tenn. 554; *Strong v. Western U. Tel. Co.,* 18 Idaho 389; *Shingleur v. Western U. Tel. Co.,* 72 Miss. 1030; *Postal Tel. Cable Co. v. Schaefer,* 110 Ky. 907; *Eureka Cotton Mills v. Western U. Tel. Co.,* 88 S. C. 498.

No case in Illinois has been cited, and we know of none, in which the precise question involved in this contention has been squarely decided. There are several cases in Illinois which hold that a telegraph company is, to some extent and for some purposes, the agent of the party who employs it to transmit a telegraphic message. *Morgan v. People,* 59 Ill. 58; *Western U. Tel. Co. v. Harris,* 19 Ill. App. 347; *Anheuser-Busch Brewing Ass'n v. Hutmacher,* 127 Ill. 652. In the case last cited, however, the court expressly stated, with reference to the facts of that case, that: "It should be observed that there is no suggestion that any of these messages were erroneously transmitted, and the case therefore does not present the question, upon which there is some conflict in the authorities, whether the sender of a telegram makes the telegraph company its general agent so as to become responsible for the acts of such agent where there is a departure from the authority actually given, by transmitting the message incorrectly."

It would be interesting, and possibly instructive, to analyze the cases in which this question has been discussed, for the purpose of arriving at some satisfactory conclusion, if that be possible, as to which of the various reasons given in such cases seems to be the best supported in principle. We do not find it necessary to do so in this case, however, for the reason that

many of the cases which follow the independent contractor theory, as well as those which follow the agency theory, hold that if an altered telegram is received and acted upon by the addressee, *before the discovery of the mistake,* the sender of the telegram is thereafter only bound to take such steps to avoid loss "as a reasonably prudent man would take to save himself, had the mistake or error been his own," and that if he does this, and a loss nevertheless ensues, the telegraph company is liable therefor. *Pepper v. Western U. Tel. Co., supra; Strong v. Western U. Tel. Co., supra; Eureka Cotton Mills v. Western U. Tel. Co., supra; Postal Tel. Cable Co. v. Schaefer, supra; Fisher v. Western U. Tel. Co.,* 119 Ky. 885; *Western U. Tel. Co. v. Shotter, supra.*

Upon this question, the case of *Pepper v. Western U. Tel. Co. supra,* while holding that a telegraph company is not the agent of the party employing it, says, as to the question of damages in such cases, where the goods have been shipped before the mistake is discovered:

"In such cases the courts will not be over nice, on behalf of the negligent company, in adjusting the scales to the wisdom of the several means open to the party injured, and undertake to weigh carefully the question as to what was best as then appeared, and certainly not as to what was best as seen in the light of subsequent events, but will merely require the victim of the negligence to act in good faith, in the exercise of ordinary prudence, in the effort to extricate himself from the situation in which he has been placed. Where this has been done, the loss resulting will be the measure of damages which he will be entitled to recover, upon the doctrine of compensation."

The same view, in another form, is expressed in the case of *Western U. Tel. Co. v. Shotter, supra,* which holds that a telegraph company is the agent of its employer. The court there said:

"Whether the telegraphic operator be the agent of the sender of a dispatch, so as to bind him, is a debatable question in the courts, the English authorities being to the effect that he is not; and the American mainly that he is. We agree with the American doctrine, at least to the extent that commercial transactions being now conducted to so great an extent through the telegraph, a merchant would lose business and credit if he did not settle in accordance with the offer actually made, though, by mistake of the agency he used to convey it, and when he does so settle in good faith, and is induced to do so by the negligence of the telegraphic company, through its servants, that company should respond to him in damages, whether absolutely bound by his contract or not."

· We think these quotations are peculiarly applicable to the facts of this case, and are decisive of the present contention, regardless of the question whether the defendant was the agent of the plaintiff, or an independent contractor. The record shows that when the plaintiff was on the witness stand, he gave as his reason for not returning the dresses a second time to Baruch, that he "was compelled to keep them." The trial judge interrupted by asking the witness what he meant by this, and the witness replied that Baruch wrote him several letters in regard to the claim, threatening that if he did not keep and pay for the dresses, the bill would be handed over to a commercial agency, which was a consequence he "tried to avoid, as a bad thing in business." It is true that this statement was stricken out on motion, but whether it was competent or not as evidence, it expresses the same view, in effect, that was expressed by the Georgia Supreme Court in the above quotation. It seems to us that this view of the matter is certainly more in accord with principles of justice and fair dealing than any view which would require the sender of a telegram in a similar case to refuse to be bound by the telegram, as delivered and

acted upon, and take the consequences of a doubtful lawsuit.

It is urged by defendant's counsel that this rule as to damages has only been applied where the goods shipped before the discovery of the mistake were perishable goods. An examination of the cases above cited, however, will show that the rule is not limited to perishable goods, but has been applied to such commodities as lumber (*Fisher v. Western U. Tel. Co., supra*) and cotton yarn (*Eureka Cotton Mills v. Western U. Tel. Co., supra*).

We may also add that the cases which hold that a telegraph company is not an agent of the person employing it, but is purely an independent contractor, seem to us to be strangely illogical in applying the above rule of damages, upon which nearly all of them agree. On the other hand, the cases which hold that a telegraph company is an agent of the party employing it, for the purpose at least of transmitting a message which completes a contract, are entirely consistent in applying the rule of damages above stated. We conclude, therefore, upon this branch of the case, that the defendant was liable to the plaintiff for any loss sustained by him as shown by the facts in this case.

As to the question of the amount of damages, it is urged that the finding and judgment are not supported by the evidence. The plaintiff testified that he did his best to dispose of the dresses after they were sent to him the second time; that he sold six of them, and that he was unable to sell the remainder. On cross-examination, he said these remaining dresses were worth $1 each. While the evidence on this point is, in some respects, unsatisfactory and inconclusive, it is, nevertheless, the only evidence in the record, and is uncontradicted. The amount of the judgment, however, does not give credit for the value of the six dresses which remained in the plaintiff's possession, viz., *$6*. In this respect, the judgment is erroneous, but this error

can be cured by a remittitur. If, therefore, the plaintiff, within ten days from the date of filing this opinion, will remit the sum of $6, the judgment for the remainder of $157.60 will be affirmed; otherwise the judgment will be reversed and the cause remanded.

*Affirmed on remittitur; otherwise reversed and remanded.*